Marlene Voss, Duane Voss, and Lisa Voss,
by her Guardian ad Litem, Martin W. Harrison,
Plaintiffs-Respondents,

Wisconsin Pipe Trades Health Fund,
Involuntary-Plaintiff,

v.

Elkhorn Area School District and Community
Insurance Corporation, Defendants-Appellants.†

Court of Appeals

*No. 2005AP3037. Submitted on briefs September 21, 2006.
—Decided October 18, 2006.*

2006 WI App 234

(Also reported in 724 N.W.2d 420.)

† Petition to review denied 2/12/07.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Daniel G. Jardine* of *Jardine Law Office, LLC*, DeForest.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Martin W. Harrison* of *Harrison, Williams, McDonell & Swatek, LLP*, Whitewater.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Elkhorn Area School District and its insurer, Community Insurance Corporation, appeal from a judgment entered after trial. Elkhorn argues that the circuit court erred when it concluded that the known and present danger exception to governmental immunity applied and exposed Elkhorn to liability for injuries Lisa Voss sustained while wearing "fatal vision goggles" in her health class. We conclude that the nature of the goggles, which replicate the effects of alcohol consumption on the body, the exercises the teacher instructed the students to carry out while wearing the goggles, and the environment in which the teacher conducted those exercises, created a hazardous situation that admitted of only a single, self-evident

response—the teacher should have called an end to the exercises. The known and present danger exception applies. We affirm.[1]

### *Facts*

¶ 2. On November 22, 2002, Lisa Voss, then a ninth grader at Elkhorn Senior High School, was injured during health class. The teacher was instructing the class regarding the effects of consuming alcohol and the dangers of operating a motor vehicle after having consumed alcohol. To illustrate the danger, the teacher had the students wear "fatal vision goggles." The teacher had been using these goggles since approximately 1998. When worn, the goggles replicate a .10 blood alcohol concentration, which was the legal limit for intoxication in Wisconsin at the time. The purpose of the goggles was to replicate the effects alcohol has on the body and how it impairs a person's ability to operate in a normal manner.

¶ 3. The teacher testified that at the beginning of the class period, he explained to the students that the fatal vision goggles would cause disorientation, a sense of a loss of balance and impaired depth perception. The teacher had the students wear the goggles and perform exercises such as walking in a straight line, shooting a ball at a garbage can and standing on one leg. While performing these exercises some of the students lost their balance, slipped or stumbled.

¶ 4. The teacher also arranged the desks in the classroom into three straight rows and instructed three students wearing goggles to walk in between the rows

---

[1] We wish to commend the attorneys for both parties. The attorneys submitted well-written and concise briefs that avoid belaboring any one point.

and go after a tennis ball thrown by the teacher.[2] The room—from front wall to back wall—measured forty-five feet. The desks were moveable, stood thirty inches high and were about three feet long. There was a writing surface and a chair that had four aluminum or steel legs. In order for the teacher to be able to throw the tennis ball to the back of the room, the desks were moved such that there was a space at the back of the room of about ten to fifteen feet. After the ball was thrown, the students would travel about twenty-five feet to go after it.

¶ 5. The teacher testified that the purpose of this particular exercise was to divert the student's attention away from an otherwise simple task (walking down an aisle of desks) and then show how the addition of another simple task (going after a ball) makes the performance of both tasks difficult when a person is under the influence of alcohol. The teacher testified to the risks inherent in the exercise, namely that a student could lose his or her balance and fall down.

¶ 6. The teacher did not intend for the students to race after the ball while performing this exercise. Lisa testified, however, that some of the boys did race to see who could get the ball first and in doing so would collide with each other or slide on the floor. A student, who performed the exercise before Lisa, bumped into a desk and her knees hit the floor. While performing this exercise, Lisa, who had never used the goggles before that day, took approximately two steps, caught her foot on the leg of a desk and tripped and then hit her mouth on the top of the desk.

---

[2] The teacher testified at trial that only two students engaged in the exercise at one time. However, Lisa testified that three students performed the exercise at a time and Elkhorn admitted as much in its answer to the Voss' complaint.

¶ 7. As a result of her fall, Lisa suffered extensive injuries to her teeth. She testified that after she fell she realized that one of her teeth had been completely knocked out and others were broken. A school nurse drove her to her dentist's office. By this time, the pain had become extreme because cold air was entering her mouth and hitting the exposed nerves.

¶ 8. Lisa's dentist cleaned out her mouth and using an "extremely painful" procedure was able to replace the tooth that had been knocked out. Three other teeth had been fractured.[3] By the time Lisa left the dentist's office, Lisa's pain had spread from her gums to her teeth. For the next couple of weeks, Lisa experienced pain and throbbing in her teeth and gums, could not eat solid foods and had difficulty sleeping due to the nature of the pain. According to her mother, Marlene Voss, Lisa was depressed, very upset and in a lot of pain. Lisa expressed how embarrassed she had been because the damage to her teeth was visible.

¶ 9. By January, Lisa's teeth had not progressed as well as her dentist had hoped and ultimately Lisa had to have multiple root canals over the course of several visits to the dentist. Following the root canals, Lisa had crown work done on her teeth. Lisa's dentist opined that in all probability, Lisa would need crown replacement or replacements in the future. The Voss' dental expenses totaled approximately $6667.

---

[3] According to Lisa's dentist, the left lateral incisor was knocked out. The dentist reinserted the tooth into its socket and fixed it with resin on the gum line toward the tongue. The two central incisors and the right lateral incisor were fractured. The dentist repaired them with flowable resin on the dried factures. In March 2003, she had root canal therapy on all four of her teeth. In April and May, she had permanent crowns affixed to all four teeth.

¶ 10. In August 2004, Lisa Voss and her parents filed a complaint against Elkhorn.[4] The Voss' alleged that Elkhorn, through its instructor, "was negligent and careless with respect to the use of goggles by [Lisa]. That [Lisa] tripped and fell because of the use of those glasses and was propelled forward and she sustained serious injuries to her teeth." Elkhorn responded with a motion to dismiss. Citing Wis. Stat. § 893.80(4) (2003–04),[5] Elkhorn argued that it was immune from suit. The trial court disagreed, finding that the known and present danger exception to immunity applied.

¶ 11. Following trial, the court again rejected Elkhorn's immunity claim, concluding that placing the students in a situation where they would be "experiencing . . . a loss of balance, a loss of depth perception, disorientation . . . and . . . attempting to negotiate an optical [sic] course while pursuing the ball is just . . . really dangerous. The fact that you got away with it for a few years doesn't make it any less dangerous." The court determined that this dangerousness gave rise to a ministerial duty on the part of the teacher to act.

## *Discussion*

¶ 12. Wisconsin Stat. § 893.80(4) immunizes units of local government and their officers and employees from liability for any action that involves the exercise of discretion and judgment. *See Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶¶ 20–21, 253 Wis. 2d 323, 646 N.W.2d

---

[4] Wisconsin Pipe Trades Health Fund, which is named as an involuntary plaintiff, provided the Voss' dental and health insurance coverage.

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

314. The immunity defense assumes negligence and focuses on whether the governmental action or inaction upon which liability is premised is entitled to immunity under the statute. *Id.*, ¶ 17. There are several exceptions to this immunity. *Id.*, ¶ 24. There is no immunity against liability associated with the performance of ministerial duties and "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees." *Id.* The application of the immunity statute and its exceptions to a given set of facts presents a question of law, which we review de novo. *Id.*, ¶ 17.

¶ 13. A ministerial duty is one that is "absolute, certain and imperative, involving merely the performance of a specific task." *Id.*, ¶ 25 (citation omitted). It is a duty that has been "positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Id.*, ¶ 26 (citation omitted).

¶ 14. The genesis of the known danger exception is *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977). There, the danger was a trail open for night hiking which "passed a few inches from an undercut dropping into a ninety foot gorge." *Id.* at 538. The court wrote that "the duty to either place warning signs or advise superiors of the conditions is, on the facts here, a duty so clear and so absolute that it falls within the definition of a ministerial duty." *Id.* at 542. "There comes a time when 'the buck stops.' " *Id.* at 541.

¶ 15. We applied this exception in *Domino v. Walworth County*, 118 Wis. 2d 488, 347 N.W.2d 917 (Ct.

App. 1984). We determined that a dispatcher for the county sheriff's department who sent a squad to a downed tree across a road and then diverted the squad elsewhere, without reassigning anyone to follow up on the downed tree, violated a clear and absolute ministerial duty. *Id.* at 490–91. We agreed that the dispatcher's duty at certain times was discretionary but "simply allowing for the exercise of discretion does not suffice to bring the actions under the blanket of immunity provided by WIS. STAT. § 893.80(4), when the facts or the allegations reveal a duty so clear and absolute that it falls within the concept of a ministerial duty." *Domino*, 118 Wis. 2d at 491.

¶ 16. More recently, in *Lodl*, our supreme court further clarified the known and compelling danger exception. In *Lodl*, a passenger was injured while riding in a vehicle that was struck in an intersection without operative traffic control signals during a storm. *Lodl*, 253 Wis. 2d 323, ¶¶ 2, 9, 10. The town had sent an officer to the intersection when it learned of the outage; however, the parties disputed whether the officer was actually directing traffic. *Id.*, ¶¶ 7, 9. The passenger sued the town, arguing that the officer had a ministerial duty to direct traffic and that the known and compelling danger exception applied. *Id.*, ¶ 12. Our supreme court disagreed, finding that while the situation was admittedly dangerous, it "allowed for the exercise of officer discretion as to the mode of response, and therefore did not give rise to a ministerial duty to perform manual traffic control." *Id.*, ¶ 5.

¶ 17. In reaching its conclusion, the court explained that the known and compelling danger exception is determined on a case-by-case basis. *Id.*, ¶ 38. A dangerous situation will give rise to a ministerial duty

when there exists a danger of such force that "the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." *Id.* (citation omitted). The duty arises, therefore, "by virtue of particularly hazardous circumstances—circumstances that are both known to the municipality or its officers and sufficiently dangerous to require an explicit, non-discretionary municipal response." *Id.*, ¶ 39.

¶ 18. The court stated that for this exception to apply, the danger must be so compelling that a "self-evident" and "particularized" municipal action is required. *Id.*, ¶ 40. It is not enough that the situation require the employee "to 'do something' about it. The generic 'doing' of 'something' cannot possibly be characterized as a ministerial duty." *Id.*, ¶ 43. Rather, a ministerial duty is a duty to act in a particular way; it is explicit as to time, mode and occasion for performance, and does not admit of any discretion. *Id.*, ¶ 44.

¶ 19. Applying these standards to the circumstances of this case, we conclude that the known and compelling danger exception applies. First, *Cords* and *Domino* are examples of conditions that are nearly certain to cause injury if not corrected, or in other words, are "accidents waiting to happen." We have those conditions here as well. The teacher knew of the perils of conducting the exercise. The fatal vision goggles distort vision and impair depth perception and sense of balance. The teacher testified that students using the goggles would lose their balance and slip or stumble while doing the simple tasks he had them perform. In fact, that was the entire purpose of the exercise—to show students how difficult a simple task becomes when alcohol is consumed. The teacher, however, chose

to conduct the exercise within the confines of a classroom with a hard tile floor and in between aisles of desks made of steel or aluminum and wood. Despite these obvious hazards, the teacher took no precautions to minimize the risk of injury.

¶ 20. Second, unlike *Lodl*, where the officer at the intersection had a number of choices that may, alone or in combination, have been reasonable, the circumstances presented on the day of Voss' injury admitted of only one response on behalf of the teacher—stop the activity the way it was presently conceived. Before Voss tripped and fell, some of the male students had collided with each other and slid on the floor and one other student had stumbled and fallen to her knees. At that point, given the physical layout of the room and the desks made of steel or aluminum and wood, the manner in which the students were stumbling and falling and the very nature of the effects of the goggles themselves, it should have been self-evident to the teacher that the activity was hazardous and the only option was to put an end to it.[6] Accordingly, the known and present danger exception to immunity applies.

¶ 21. We are not persuaded by Elkhorn's comparisons to *Kimps v. Hill*, 200 Wis. 2d 1, 546 N.W.2d 151 (1996), and *Bauder v. Delavan-Darien School District*, 207 Wis. 2d 310, 558 N.W.2d 881 (Ct. App. 1996). In *Kimps*, a student at a state university was injured while moving a volleyball standard during a physical education class. *Kimps*, 200 Wis. 2d at 5–6. The volleyball

---

[6] We recognize the teacher had the best of intentions in conducting the exercises. We appreciate the importance of instructing teenagers on the dangers of drinking and driving and the difficulty of effectively conveying those messages to teenagers. Such lessons, however, must be conducted in a safer manner.

standard had been safely used for between fifteen and seventeen years with the exception of a single prior incident that resulted in government action deemed appropriate to address the problem. *Id.* at 6–7, 15–16. Our supreme court concluded that, given these circumstances, the volleyball standard did not create a compelling and known dangerous situation. *Id.* at 15–16. In *Bauder*, a student was injured while using a partially deflated soccer ball in an indoor gym class at a public school. *Bauder*, 207 Wis. 2d at 312. We concluded that, while an expert's affidavit showed that deflating a ball causes more susceptibility to eye injuries, deflating a ball is not an "obvious" danger to students and therefore the known and compelling danger exception did not apply. *Id.* at 314–15.

¶ 22. Here, unlike *Kimps* and *Bauder*, the teacher was well aware of the perils of using the goggles and had seen other students stumbling on the day of Voss' accident, but failed to take any precautions to prevent injury. Further, a student wearing the fatal vision goggles suffered from impaired depth perception, a sense of a loss of balance and distorted vision. Having the student then go after a ball that is bouncing or rolling through aisles of metal and wood desk chairs creates the "obvious" hazard absent from *Kimps* and *Bauder*. *Kimps* and *Bauder* do not control.

### Conclusion

¶ 23. In sum, the known and present danger exception to governmental immunity applies. Elkhorn is not entitled to the protections Wis. Stat. § 893.80(4) affords. We affirm the judgment in the Voss' favor.

*By the Court.*—Judgment affirmed.