Andrew HEUSER, a minor, by his guardian ad litem, Ann S. Jacobs, Michael Heuser and Barbara Heuser, Plaintiffs-Respondents,

UNITED HEALTHCARE INSURANCE COMPANY, Subrogated-Plaintiff,

v.

COMMUNITY INSURANCE CORPORATION and Kenosha Unified School District #1, Defendants-Appellants.

Court of Appeals

*No. 2008AP2760. Submitted on briefs August 17, 2009.*
*—Decided September 30, 2009.*

2009 WI App 151

(Also reported in 774 N.W.2d 653.)

■

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Charles H. Bohl* and *John B. Tuffnell* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Ann S. Jacobs* of *Domnitz & Skemp, S.C.* of Milwaukee.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. BROWN, C.J. Andrew Heuser was the third student in one day to sustain a cut while using a scalpel to dissect a flower during 8th grade science. He sued the Kenosha Unified School District #1, claiming negligence. The School District responded, in pertinent part, by asserting that it was immune from negligence suits. Andrew replied that the known and compelling danger exception allowed him to recover. The School District countered that the exception does not apply because the teacher had the discretion to decide which precautionary measure to take. The trial court ruled in favor of Andrew. We affirm. What the School District says is

true—so long as *a* precautionary measure is taken in response to an open and obvious danger, the law is that the government remains immune from suit. But the trial court found that the teacher in this case took *no* precautionary measure to deal with the danger. While the teacher had the option to pick one precautionary measure over another, she certainly did not have the option to do nothing. We conclude that the exception applies.

## BACKGROUND

¶ 2. We glean the following facts from the bench trial.[1] On February 9, 2006, Andrew's 8th grade science teacher used an activity plan where students used scalpels to dissect the reproductive parts of a flower. This was the teacher's first semester teaching 8th grade science, and she was a new teacher. She taught four class periods of 8th grade science each day and all completed the same flower dissection lab.

¶ 3. The teacher testified that she started the first class with "standard" lab instructions:

> We're doing a lab, so the same lab procedures as always would follow. Follow the instructions, appropriate lab behavior, which includes, you know, no horsing around or goofing around. It needs to be taken seriously. The consequences for those actions would be removal from the lab and it—depending on the severity—possible removal from future labs. You're using scalpels. They're very sharp. You need to be careful. They're very sharp. So one person from each group would need to come and take a scalpel from me, only when they got to the ovary

---

[1] We note that the teacher was unable to be present for trial. So, the parties stipulated that her deposition would be admitted at trial.

part. Especially when the scalpels are out, there shouldn't be any goofing around. You need to be serious because they're sharp. When you're done, put the cap back on.

She did not demonstrate or give specific instructions on scalpel use. Also, the textbook with the flower dissection activity plan instructed persons to use caution when handling sharp objects. But it did not offer any specific instructions on scalpel use. And the other rules provided to every 8th grade science student were only general rules that applied to all labs.

¶ 4. During the first class period, two students were cut while using the scalpels. The teacher explained that one student was cut while "his partner was using the scalpel and he got his hand in the way." The teacher testified she did not know and never investigated how the second student was cut. However, the teacher did not think that the student was horseplaying.

¶ 5. After the first class, the teacher filled out two standard student accident report forms. The form asked teachers to answer: "What recommendations do you have for preventing other accidents of this type?" Andrew's teacher answered both forms the same: "Limit scalpel use or use scissors instead."

¶ 6. For the remaining three classes, the teacher continued using the original lab plan without limiting scalpel use or providing scissors as an option. Nor did the teacher demonstrate proper scalpel technique or instruct the students how to cap and uncap the scalpels. The teacher explained that the instructions for Andrew's class "[w]ould have been the same as before." The only difference was that she informed the class about one of the students having been injured during the first class period.

¶ 7. Andrew was cut with a scalpel during the final class. It was his first time using a scalpel. He was holding the scalpel's protective cover in one hand and the bottom of the scalpel in the other to pull the cover off, but the cover was stuck. So he pulled harder, and the scalpel suddenly broke free and cut him. The scalpel cut through two of his fingers and severed a tendon. Andrew recounted at trial that he saw blood on the ceiling, on his lab partners' shorts, pooling on the floor, and everywhere. He went pale and started screaming. Ultimately, he had reconstructive surgery. He testified that he has some lingering issues, but they do not interfere with his life.

¶ 8. After Andrew's accident, the teacher filled out another accident report form. This time, the teacher recommended either that "[o]nly [the] teacher dissects with [a] scalpel" or that scalpels be removed. The teacher also stated that the dissection activity could have been completed with a pair of scissors. And she testified that Andrew was not misbehaving and did not violate any of the lab safety or etiquette rules.

¶ 9. Through a guardian ad litem, Andrew sued the School District for damages, as did his parents. They alleged that the School District, through its teacher, was negligent in supplying Andrew a scalpel without providing the proper training and supervision in its use. The School District denied negligence and argued that even if it was negligent, governmental immunity precluded Andrew's lawsuit. The trial court concluded after the bench trial that the teacher was negligent and the known and compelling danger exception to immunity applied because the same circumstances present in *Voss ex rel. Harrison v. Elkhorn Area School District*, 2006 WI App 234, 297 Wis. 2d 389, 724 N.W.2d 420, were present in this case. It apportioned

80% of the negligence to the teacher and 20% to Andrew. The School District appeals.

## DISCUSSION

### *Negligence*

¶ 10. The first issue on appeal is whether the trial court erred in concluding that the School District was negligent. The School District argues that "[t]here is nothing in the record even hinting that allowing eighth grade students to use scalpels is below the standard of care for a school district."

■■

¶ 11. As a general rule the existence of negligence is a question of fact. *Ceplina v. South Milwaukee Sch. Bd.*, 73 Wis. 2d 338, 342–43, 243 N.W.2d 183 (1976). We are precluded from making findings of fact where the facts are in dispute. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980). Instead, we affirm the trial court's findings of facts unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2007–08).[2] Under this standard, even if the evidence would permit a contrary finding, we affirm findings of fact as long as the evidence would permit a reasonable person to make the same finding. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643–44, 340 N.W.2d 575 (Ct. App. 1983).

¶ 12. Here, the trial court examined the jury instructions defining negligence, negligence of children, and negligence of teachers. *See* WIS JI-CIVIL 1005, 1010, 1380, and 1381. The jury instruction the teacher allegedly violated here is 1380, which outlines a teacher's duty to instruct or warn students. It states in relevant part:

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

A teacher occupies a position in relation to his or her pupils comparable to that of a parent to his or her children. A teacher has the duty to instruct and to warn the pupils in his or her custody of any dangers which the teacher knows, or in the exercise of ordinary care ought to know, are present in the classroom (laboratory, gymnasium, etc.) and to instruct them in methods which will protect them from those dangers, whether the danger arises from equipment, devices, machines, or chemicals. A failure to warn the students of such danger or instruct them in means of avoiding such danger is negligence.

WIS JI-CIVIL 1380.

¶ 13. The trial court then referenced the facts we recited above and concluded that the teacher, and thus the School District, was negligent. It explained that the teacher "was aware of earlier injuries sustained with the use of the scalpel, she did not warn the students sufficiently of the danger of being cut, and did not properly instruct them in the scalpel's use." The trial court focused on the teacher's lack of precautions—that even following the students' injuries during first period, the teacher did not demonstrate how to take the cap off of the scalpel or what sharp meant, limit scalpel use, or allow them to use scissors instead. The trial court also referenced the teacher's comments on the incident reports that other accidents of this type could be prevented by limiting scalpel use or using scissors instead. We conclude that these determinations are not clearly erroneous since they are supported by the record.

██

¶ 14. In coming to this conclusion, we reject the School District's arguments that the findings were based, in significant part, on two pieces of evidence that

the trial court was prohibited from using: a subsequent remedial measure and irrelevant evidence. First, the School District alleges that reliance on the school incident reports filled out by the teacher after the accidents was erroneous because the reports were subsequent remedial measures under WIS. STAT. § 904.07. Section 904.07 states in relevant part: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

¶ 15. This contention is a nonstarter. The reports were not "measures taken"; they were just response forms with written statements by the teacher. No party alleged that either the School District or the teacher applied any of the remedial precautions suggested by the teacher. Just because an incident report may be designed to allow remedial measures to be taken, and we are not even sure that was the purpose of the reports, that intent does not alone make the contents of the report inadmissible under WIS. STAT. § 904.07. There must have actually been some subsequent remedial measures undertaken. Here, there were not. We see no reason why the trial court could not consider these reports.

¶ 16. Second, the School District asserts that evidence of the teacher's failure to demonstrate how to use the scalpel or remove its cap was irrelevant. It argues that no one could know, not even the teacher who had notice of two other students having been cut earlier that day, that Andrew would have cut himself because the cover was stuck. So, the School District wonders how the teacher could have known that she should discuss with her classes how to take the covers off when

there had been no previous accident involving a cover. In the School District's view, such an event was not foreseeable.

¶ 17. The law in Wisconsin scuttles the School District's argument. No one, not Andrew or the trial court, faults the teacher for failing to precisely predict that a student might encounter a scalpel cover which was stuck. No one is asking that the teacher be a clairvoyant. Rather, the fault lies in the teacher doing nothing in the face of personal knowledge that using the scalpels raised a safety issue. The teacher could have exercised her discretion in any number of ways. She could have taken her own advice and used scissors. She could have gone from table to table and done the dissecting for the students. She could have closely supervised each student. She could have instructed them from A to Z, starting with how to take off the cover and ending with how to put the cover back on, which is what the trial court was alluding to in its decision. Anything. Anything. But she did nothing.

¶ 18. Wisconsin has long followed the minority rule recited in the seminal case of *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J. dissenting): "[Everyone] owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." And as our supreme court has since stated: "[T]he law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen." *Cirillo v. City of Milwaukee*, 34 Wis. 2d 705, 712, 150 N.W.2d 460 (1967).

739

¶ 19. The question is not "whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances." *Walker v. Bignell*, 100 Wis. 2d 256, 264, 301 N.W.2d 447 (1981). Thus any evidence of what the teacher did and did not instruct and demonstrate is relevant to whether the teacher satisfied her duty to warn. *See* WIS. STAT. § 904.01 (defining relevance); *see also City of Milwaukee v. NL Industries*, 2008 WI App 181, ¶ 64, 315 Wis. 2d 443, 762 N.W.2d 757 (trial courts have broad discretion in determining the relevance of evidence and its decision will not be reversed absent an erroneous exercise of that discretion), *rev. denied*, 2009 WI 34, 316 Wis. 2d 719, 765 N.W.2d 579 (No. 2007AP2873). We uphold the trial court's finding that the School District was negligent.

### Governmental Immunity

¶ 20. The second issue on appeal is whether the School District is immune from suit. WISCONSIN STAT. § 893.80(4) immunizes school districts, among other governmental units, from liability for acts that involve the exercise of discretion or judgment. *See Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶ 41, 315 Wis. 2d 350, 760 N.W.2d 156 (citing *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 20, 253 Wis. 2d 323, 646 N.W.2d 314). There are four exceptions to governmental immunity. *See Noffke*, 315 Wis. 2d 350, ¶ 42. We need only discuss the one exception relevant here—that there is no immunity from liability for acts associated with "known

and compelling dangers that give rise to ministerial duties on the part of public officers or employees." *Id.*, ¶¶ 42, 53.

■■
¶ 21. The application of the immunity statute and its exceptions to a given set of facts presents a question of law, which we review de novo. *Id.*, ¶ 9. We address immunity and its exceptions on a case-by-case basis. *Lodl*, 253 Wis. 2d 323, ¶ 38.

■■
¶ 22. The School District's first immunity argument is largely a repeat of its negligence argument, which we have already addressed. It argues that this exception requires "actual knowledge" of the "dangerous condition," which it frames as removing the protective cover on the scalpel. But again this mistakes the law. Wisconsin law does not require knowledge of the specific cause of the injury; it determines knowledge from the general danger of the circumstances. *See, e.g., Voss*, 297 Wis. 2d 389, ¶ 19 (examining if the teacher knew the general perils of the activity, not the specific way the student was injured, to determine if there was a known and compelling danger). Just like the law in Wisconsin on foreseeability, the focus is on the action (or inaction) that could cause injury, not on the particular injury that occured. *See Lodl*, 253 Wis. 2d 323, ¶ 40.

¶ 23. The theory of this exception is that when a danger known to a public officer or employee is of such a compelling force, it strips that person of discretion or judgment and creates an absolute, certain and imperative duty to act. *Id.*, ¶ 34. In other words, the danger is an "accident waiting to happen." *Voss*, 297 Wis. 2d 389, ¶ 19. And the duty is ministerial, requiring a particularized action with a self-evident "time, mode and

741

occasion." *Lodl*, 253 Wis. 2d 323, ¶¶ 38, 40, 44. The duty part is where most issues arise.

¶ 24. This leads us to the School District's second argument—that its duty was discretionary, not ministerial. The School District appears to analogize their position to the government's position in *Lodl*. In *Lodl*, traffic lights at an intersection stopped working. *Id.*, ¶ 6. And heavy rains decreased visibility at the intersection. *Id.* A sergeant testified that he "dropped," or opened, the folded stop signs affixed to the poles of the traffic control signals. *Id.*, ¶ 7. A police officer also came to the intersection. *Id.*, ¶ 8. The parties disputed whether the officer was manually directing traffic. *Id.* But it was undisputed that the officer requested backup and portable stop signs. *Id.* Unfortunately, an accident occurred before police backup or portable signs arrived. *Id.*, ¶ 10.

¶ 25. The injured motorist in *Lodl* argued that the police officer had a ministerial duty to manually control traffic. *See id.*, ¶ 11. The court of appeals concluded that the exception's application depended on whether the officer was in fact manually directing traffic. *Id.*, ¶¶ 13–14. We equated manually directing traffic as doing "something," and the lack of manual control as doing "nothing." *See id.* But our supreme court accepted review and disagreed with the weight we gave to the officer's choice. We had reasoned that simply dropping a manual stop sign and awaiting portable stop signs, rather than manually directing traffic, was synonymous with doing nothing. *See id.*, ¶¶ 8–9, 41. The supreme court noted, however, that the officer and sergeant *had* taken precautions to minimize the danger and concluded that whether the officer performed a *specific* precautionary measure was a negligence question, not an immunity one. *See id.*, ¶¶ 19, 42. The

supreme court reasoned that the officer had the discretion to choose whether to address the danger through manual traffic control by a single officer, or another way such as portable signs, flares, or flashing squad lights. *Id.*, ¶¶ 46–47. Therefore, the supreme court determined that the decision about whether to perform manual traffic control was discretionary. *Id.* And thus, the supreme court concluded that the known and compelling danger exception did not apply. *Id.*, ¶ 48.

¶ 26. Importantly, the *Lodl* court also instructed on the difference between discretionary and ministerial duties. It acknowledged that "there is language in some of the cases referring generally to a 'duty to act' instead of a duty to perform a particular act." *Id.*, ¶ 44 n.7. And it explained how a ministerial duty is more than a "generalized 'duty to act' " because that is "too nonspecific and leaves the mode of official action open to discretion." *Id.* Instead, the duty arising out of known dangerous circumstances must be ministerial, requiring "specificity as to time, mode, and occasion for performance so that nothing remains for the exercise of discretion . . . . [T]he cases finding a known danger sufficient to pierce immunity are premised on conclusions that particularized government responses were required by the dangerous circumstances in question." *Id.*

¶ 27. Andrew relies on one of the cases that the *Lodl* court discussed—*Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977)—and another case that we cited above, *Voss*. In both cases, the courts held that the government's duty was ministerial. The reason why *Lodl* was decided differently from *Cords* and *Voss* is illustrated by looking at the three steps in the factual sequence of the known and compelling danger exception. So before discussing *Cords* and *Voss*, we will explain the important distinction.

743

¶ 28. The three steps in the factual sequence are as follows. First, something happens to create compelling danger. Second, a government actor finds out about the danger, making it a known and compelling danger. And third, the government actor either addresses the danger and takes one or more precautionary measures, or the actor does nothing and lets the danger continue. *Lodl* differs from *Voss* and *Cords* in the third step.[3]

¶ 29. We will start with *Cords*, in which our supreme court created the known and compelling danger exception. In *Cords*, a ninety-foot-deep gorge was just inches from the hiking trail. *Cords*, 80 Wis. 2d at 538. The park manager knew this terrain was dangerous, particularly at night. *Id.* at 541. And his position as park manager required him to make sure the trails were in safe condition and give his supervisors reports with the steps necessary to reduce safety hazards. *Id.* at 536–37. But the park manager did nothing about the trail next to the gorge. *Id.* And on one fateful spring night, several hikers fell into that gorge, with the result that some of the hikers were severely injured. *Id.* at 534–36.

---

[3] The School District also analogizes their case to *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶¶ 46–50, 315 Wis. 2d 350, 760 N.W.2d 156, where our supreme court held that a cheerleading coach was immune from a cheerleader's lawsuit because the coach had them doing an exercise less difficult then they had already successfully completed, under similar circumstances to where they had their performances, and with one more spotter than required. In other words, our supreme court held that the activity was not a compelling danger. *See id.*, ¶ 57. The case did not even get to the third step of whether or how the coach had to address the danger. Thus, *Noffke* does not help the School District.

¶ 30. The *Cords* court held that the park manager had a ministerial duty to either place signs warning the public of the dangerous conditions existing on the trail or advise his superiors of the condition, as he needed his superiors' approval to post warning signs. *Id.* at 538, 541–42. The court explained that "[t]here comes a time when 'the buck stops.' [The park manager] knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty." *Id.* at 541.

¶ 31. In *Voss*, students were wearing "fatal vision goggles" to learn about the effects of alcohol. *Voss*, 297 Wis. 2d 389, ¶ 2. When worn, the goggles were meant to replicate a .10 blood alcohol concentration. *Id.* A ninth grade teacher had students wear the goggles and perform exercises like walking in a straight line, shooting a ball at a garbage can, and standing on one leg. *Id.*, ¶ 3. The teacher also arranged the classroom desks into three rows and instructed students to walk in between the rows and recover a tennis ball thrown by the teacher. *Id.*, ¶ 4. During the tennis ball exercise, some of the students collided and slid on the floor. *Id.*, ¶ 6. Yet the teacher continued the exercise. *Id.* Then one student tripped and hit her mouth on a desktop. *Id.* The student underwent extensive dental work to repair multiple teeth. *Id.*, ¶¶ 7–9.

¶ 32. The *Voss* court concluded that "the circumstances presented on the day of [the student's] injury admitted of only one response on behalf of the teacher —stop the activity the way it was presently conceived." *Id.*, ¶ 20. The court explained that "the teacher was well aware of the perils of using the goggles and had seen other students stumbling on the day of [the student's] accident, but failed to take any precautions to

prevent injury." *Id.*, ¶ 22. So both *Cords* and *Voss* hold that the step of actually taking a precautionary measure is ministerial.

¶ 33. *Lodl* is different. There, the officer did address the danger. The police enforcement personnel chose to try and minimize the danger of an uncontrolled intersection by dropping the stop signs and calling for portable signs. Someone still got hurt. And that person alleged that manual traffic direction was required. While this court held that manual control was the appropriate response to the situation and would have been evidence that law enforcement had "done something," the supreme court held that manual traffic control was not a required action since the officer employed an alternative precautionary action. *Lodl*, 253 Wis. 2d 323, ¶¶ 46–47. So, if the officer acted to minimize the danger, then the action chosen was "something" and, whatever the choice, it was within that actor's discretion.

¶ 34. Here, it is self-evident that another student could get hurt from the flower dissection lab unless the activity was changed from the way it had heretofore been conceived. It was not changed. And under those circumstances, the teacher had the same ministerial duty as the teacher in *Voss*: to "stop the activity the way it was presently conceived." *Voss*, 297 Wis. 2d 389, ¶ 20. Had the teacher performed one of the two precautionary measures she identified (limiting scalpel use or using scissors instead), this accident may never have occurred. Or if the teacher had carefully instructed from A to Z, or decided to closely supervise the students while the dissections were made, the accident may still have occurred, but then we would have a situation like *Lodl*, where the teacher would have made the discre-

tionary choice to do "something." But again, the teacher here did nothing. She did not follow through with any of her recommendations or make some other choice. And that is why the duty here is ministerial. That is why "the buck stops here." We affirm.

*By the Court.*—Judgment affirmed.