Mary C. ODEN and Octavius Holt,
Plaintiffs-Appellants,

STATE OF WISCONSIN DEP'T. OF HEALTH AND FAMILY
SERVICES, Involuntary-Plaintiff,

v.

CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 2014AP130. Submitted on briefs October 7, 2014.*
*—Decided March 3, 2015.*

2015 WI App 29

(Also reported in 863 N.W.2d 619.)

† Petition for Review Filed.

710

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Edward E. Robinson* of *Cannon & Dunphy, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney by *Jan A. Smokowicz*, assistant city attorney.

Before Kessler and Brennan, JJ., and Thomas Cane, Reserve Judge.

¶ 1. KESSLER, J. Mary Oden and her minor child Octavius Holt (collectively Oden) appeal from summary judgment in favor of the City of Milwaukee dismissing their complaint on the grounds that the City was immune from suit. We reverse and remand for trial.

## BACKGROUND

¶ 2. In the early morning hours of February 1, 2009, two separate residents of the 2400 block of North 10th Street, Milwaukee, called 911 to report an odor of natural gas. The first call was made at approximately 2:14 a.m. from the resident of the upper unit of 2452 North 10th Street. The caller reported the smell as coming from his basement. The 911 dispatcher added the Milwaukee Fire Department (MFD) to the call at 2:15 a.m. At approximately 2:18 a.m., a second resident from the block called to report a natural gas smell. The second caller indicated that the "gas line is out of [the] ground and you can hear it and really strong smell." (Capitalization omitted.)

¶ 3. Milwaukee firefighters and police officers were dispatched. Records indicate that a "strong odor of gas throughout the block" was observed and "there [was] a gas break in the street; WE Energies notified." By 2:29 a.m., responders had "confirmed gas leak [] [f]rom the street which is bubbling [] [r]ight now per MFD. People are remaining in homes but being notified door to door. Will advise if evacutation (sic) is necessary & if county buses needed." At approximately 2:35 a.m., according to MFD records, Fire Battalion Chief Paul Conway and all firefighters returned to their stations, leaving Milwaukee police to wait for We Energies representatives to arrive.

¶ 4. About an hour later, at 3:37 a.m., Oden's home, located at 2427 North 10th Street, exploded with Oden and her eight-year-old son, Holt, inside. Oden and Holt sustained severe injuries. After the explosion, buses were requested, evacuation was ordered, and police were ordered to "kick doors in if residents do not answer."

¶ 5. An investigation conducted by Fire Check Incorporated revealed that: a complete circumferential break in the pipe that served the gas main in the 2400 block of North 10th Street was the source of the natural gas leak; the gas migrated under frozen soil[1] and entered the confined space of the basement of 2427/2429 North 10th Street where it built up to an explosive range; the pilot light of the water heater in the basement of 2427 North 10th Street was the probable source of gas ignition; and if the flow of gas from the outside meters to the duplex had been shut off, the pilot light would have been extinguished.

¶ 6. Oden sued the City of Milwaukee, We Energies, and their respective insurance companies.[2] As to her allegations against the City, Oden claimed that the City police officers and firefighters who responded to the scene negligently failed to evacuate the homes on the street, including her residence.

¶ 7. The City moved for summary judgment, arguing that it was immune from liability pursuant to WIS. STAT. § 893.80(4) (2013–14)[3] because neither Milwaukee police officers nor firefighters had a "ministerial duty" to evacuate the homes in the 2400 block of

---

[1] The record does not specifically indicate whether gas migrated through the soil to other dwellings. However, since the first 911 caller reported living in the upper unit of a duplex, but smelling gas from his basement, one might reasonably infer that such a migration occurred. That possibility does not affect our decision in this case.

[2] Oden's claims against We Energies have been resolved. We only address her claims against the City in this appeal.

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted. The 2009–10 version of WIS. STAT. § 893.80(4), in effect at the time Oden and Holt sustained their injuries, has not altered in any way that affects our opinion.

North 10th Street. In support of summary judgment, the City produced documents and excerpts of testimony from fire department officers that established the following and are undisputed:

- In 2008, We Energies provided one-day training sessions to the entire Milwaukee Fire Department about how to respond to electric emergencies and natural gas leaks.

- All of the training fire department personnel received in response to gas leak emergencies was provided solely by We Energies.

- The one-day training sessions occurred over a six-week period so that the thousand members of the fire department could obtain the training.[4]

- The We Energies training manual provided during that training was titled "Electric and Natural Gas Hazards and the First Responder [—] a handbook for recognizing and handling electric and natural gas hazards in an emergency."[5]

- Battalion Officer Erich Roden stated in his deposition that he was not aware of any other handbook in the fire department's possession in 2009 that identified proper fire department responses to natural gas leaks.

The record contains no evidence that Milwaukee Police Department officers ever received the specialized first responder training that We Energies provided for the MFD.

---

[4] A CD in the record is identified as "Training video." It is Exhibit 28 to the affidavit opposing the City's motion for summary judgment. It is characterized by counsel as a video of the 2008 training session. The CD in the record is either blank or incompatible with the technological capacity available to the court. Consequently, it has not been reviewed.

[5] For convenience, we refer to this document hereafter as "First Responder Handbook."

714

¶ 8. As it relates to natural gas leaks, the First Responder Handbook contains specific instructions relating to specific circumstances. As relevant here, instructions for "Emergency Response" include:

GENERAL PRECAUTIONS . . .

- If . . . you smell natural gas, use the most cautious choice available to you and *assume there is an ignitable mixture present. Evacuate the area.*

In Addition:

- Keep people and vehicles away from the hazard area.

- *Do not allow anyone to enter or remain in buildings where natural gas is present.*

. . . .

NATURAL GAS ESCAPING OUTSIDE

- Approach the area from upwind (wind at your back).

- Keep vehicles and people out of the area where natural gas is leaking.

- Remove or eliminate all ignition sources.

- *Check nearby buildings and structures for natural gas. Natural gas can migrate long distances under pavement* or through telephone and electric ducts or sewer lines.

- Use fog spray to *move escaping natural gas away from* hazard areas such as roads or *buildings where the natural gas could ignite.*

- If possible, keep water out of excavations where natural gas is blowing.

715

- Do not enter any excavation or confined vault or pit where natural gas is blowing to stop the flow of natural gas. Natural gas may exclude oxygen in these areas. In addition, static electricity may accumulate on plastic pipe, creating an ignition hazard if you were to enter such an area.

- *Protect people and adjacent buildings and* call We Energies to make any needed repairs or remotely shut off the natural gas.

(Emphasis added; some formatting altered.) Finally, the First Responder Handbook summarized:

SUMMARY

If you suspect a natural gas leak, take the following steps:

- Call We Energies immediately from a telephone outside the building. We will send a radio-dispatched crew to the area to investigate the problem.

- *Clear the building of all occupants.*

- Keep all sources of flame and sparks away from the suspected natural gas leak area . . . . Eliminate all ignition sources.

- If it can be done safely, ventilate the building by opening windows and doors to permit the natural gas to escape.

- Attempt to locate and shut off the above-ground natural gas meter valve.

- Stand by for assistance from We Energies at a safe distance.

(Emphasis added; some formatting altered.)

716

¶ 9. In opposition to summary judgment, Oden argued that the City was not entitled to immunity because the gas was a known and present danger and City officers were negligent in failing to evacuate the homes. Oden cited portions of the First Responder Handbook instructing on evacuation and testimony from Assistant Fire Chiefs Gerard Washington and Michael Romos, both of whom stated that gas main breaks are hazardous situations requiring evacuation.

¶ 10. The circuit court granted the City's summary judgment motion, finding that "[t]here is no particular document or policy that imposes a duty here," although "[t]here is no doubt that the gas leak here was extremely dangerous, more than unsafe," the police officers and firefighters "had no ministerial duty based on the policies or law to act in a certain prescribed way. They used their discretion." Thus, the circuit court concluded that the City was immune from suit under Wis. Stat. § 893.80(4). Oden now appeals.

## DISCUSSION

**Standard of Review.**

¶ 11. " 'In reviewing a grant of summary judgment, this court applies the same standards as the [circuit] court. A motion for summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Ellerman v. City of Manitowoc*, 2003 WI App 216, ¶ 6, 267 Wis. 2d 480, 671 N.W.2d 366 (citation omitted). "However, 'summary judgment is not appropriate if there is a material issue of fact or if different inferences may be drawn

from the facts.' " *Id.* (citation omitted). On this review, we determine—accepting Oden's allegations of fact as true—whether the City was entitled to summary judgment on the grounds of municipal immunity. *See Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 4, 236 Wis. 2d 137, 613 N.W.2d 110. "The application of the immunity statute and its exceptions involves the application of legal standards to a set of facts, which is a question of law." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314; *see also Heuser ex rel. Jacobs v. Community Ins. Corp.*, 2009 WI App 151, ¶ 20, 321 Wis. 2d 729, 774 N.W.2d 653.

### Ministerial Duty Based on Policy.

¶ 12. WISCONSIN STAT. § 893.80(4) provides, as material to this case, that: "No suit may be brought against any ... governmental subdivision or any agency thereof ... or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." This "statute immunizes against liability for legislative, quasi-legislative, judicial, and quasi-judicial acts, which have been collectively interpreted to include any act that involves the exercise of discretion and judgment." *Lodl*, 253 Wis. 2d 323, ¶ 21. As material to this case, *Lodl* explains that "[t]here is no immunity against liability associated with: 1) the performance of ministerial duties imposed by law; [and] 2) known and compelling dangers that give rise to ministerial duties on the part of public officers or employees." *Id.*, ¶ 24. "A ministerial duty is one that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law im-

poses, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.' " *Id.*, ¶ 25 (citation omitted).

■

¶ 13. "The first step in the ministerial duty analysis is to identify a source of law or policy that imposes the alleged duty." *American Family Mut. Ins. Co. v. Outagamie Cnty.*, 2012 WI App 60, ¶ 13, 341 Wis. 2d 413, 816 N.W.2d 340. In the context of a series of bulletins describing how to secure a person using a scooter or wheelchair on a Milwaukee County bus, we held that "the driver had a mandatory, ministerial duty to ensure, to the best of his ability and judgment that Rolland was safely secured on his bus." *Rolland v. County of Milwaukee*, 2001 WI App 53, ¶ 12, 241 Wis. 2d 215, 625 N.W.2d 590.

¶ 14. There is no dispute that the City exercised its legislative power adopting its code of ordinances. Chapter 214 of the Code of Ordinances, titled "Fire Prevention," specifically adopts Wis. Admin. Code ch. SPS 314.[6] Chapter SPS 314 adopts and incorporates by reference the Fire Code of the National Fire Prevention Association (NFPA 1). *See* Wis. Admin. Code § SPS 314.001. The NFPA 1 directs energy providers to cooperate with local fire and police departments in providing specialized training in response to inadvertent gas leaks.[7]

---

[6] *See* The City of Milwaukee Code of Ordinances, § 214–2. http://city.milwaukee.gov/ImageLibrary/Groups/ccClerk/Ordinances/Volume-2/CH214.pdf (last visited Jan. 20, 2015).

[7] "The planning for effective measures for control of inadvertent LP-Gas release or fire shall be coordinated with local emergency handling agencies such as fire and police departments. Such measures require specialized knowledge and

¶ 15. It is undisputed that the City provided no separate training for natural gas leak emergencies. It is also undisputed that the department-wide in-service training was mandatory for the entire MFD in 2008. We conclude based on this undisputed evidence that the City implemented its legislative actions by delegating responsibility to We Energies for training first responders on how to respond to natural gas emergencies. The First Responder Handbook accompanied the 2008 training. The responsibility for developing the training manual was also effectively delegated to We Energies by the City. That handbook is the only written protocol available in this record describing how City employees are to handle natural gas emergencies, and was effectively adopted by the City when it delegated specialized training authority to We Energies.

¶ 16. The application of governmental immunity, and its exceptions, to a given set of facts is a question of law we review *de novo*. *Heuser*, 321 Wis. 2d 729, ¶ 21; *see also Bicknese v. Sutula*, 2003 WI 31, ¶¶ 21–25, 260 Wis. 2d 713, 660 N.W.2d 289 (Chair of Neurology Department at University of Wisconsin Medical School was under a ministerial duty to set terms of employment for potential new hire in accordance with the policies and procedures outlined in Chapter Seven of the UW Policies and Procedures.); *Ferraro v. Koelsch*, 124 Wis. 2d 154, 157–58, 368 N.W.2d 666 (1985) (Employment handbook at issue created a contract that could only be terminated by adherence to its terms.); *Cosio v. Medical Coll. of Wis., Inc.*, 139 Wis. 2d 241, 244–45, 407 N.W.2d 302 (Ct. App. 1987) (Handbook provided to students at medical

training not commonly present in the training programs of emergency handling agencies . . . ." NFPA at 21–3.4.1.2.

college created an honor code for students, a violation of which was a breach of contract.). The MFD had a ministerial duty based on the City action delegating to We Energies both MFD emergency response training and performance requirements in the First Responder Handbook. Consequently, the City has no immunity. *See Lodl*, 253 Wis. 2d 323, ¶ 21.

¶ 17. The undisputed facts establish that there was a gas leak in the street of a residential block causing bubbling water at 2:30 a.m. in the winter—a time when most residents were probably sleeping. It is undisputed that the nature of the gas leak created a serious danger. A jury could conclude that responding members of the MFD were negligent if they failed to follow the ministerial duties described above. Consequently, summary judgment for the City was improper.[8]

**Known and Compelling Danger Exception to Immunity.**

¶ 18. The plaintiffs argue that the known and compelling danger exception to governmental immunity also bars summary judgment. "The theory of this exception is that when a danger known to a public officer or employee is of such a compelling force, it strips that person of discretion or judgment and creates an absolute, certain and imperative duty to act."

---

[8] There are other facts from which a jury could draw different inferences. However, on summary judgment we must draw inferences favorable to the party against whom summary judgment is sought. *See Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 40, 294 Wis. 2d 274, 717 N.W.2d 781.

*Heuser*, 321 Wis. 2d 729, ¶ 23. When the danger is an accident waiting to happen, the particular action required is ministerial in that it is self-evident. *See i d.*; *see also, e.g., Linville v. City of Janesville*, 174 Wis. 2d 571, 587–88, 497 N.W.2d 465 (Ct. App. 1993) (A paramedic had a ministerial duty to attempt a rescue from a submerged van, which he knew contained a child and an adult, rather than wait twenty minutes for the van to be pulled from the pond.).

¶ 19. It is undisputed that the two 911 callers reported smelling gas in their homes and that one caller reported seeing an obvious gas line leak in the street. The obvious leak in the street was confirmed by City employees promptly upon their arrival. The trial court here observed, "[t]here is no doubt that the gas leak here was extremely dangerous, more than unsafe." We conclude, based on these undisputed facts, that this was a known and compelling danger which imposed a ministerial duty on the City to act. Whether the City was negligent in the manner in which it performed its ministerial duty is a question for the jury.

¶ 20. For all the foregoing reasons, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.