REILLY, P.J. (dissenting).
¶27 I respectfully dissent as the known and present danger exception clearly applies. A kettle that holds boiling liquids and has been known for over a year to have defective gears and be prone to tipping is a known and present danger that creates a ministerial duty to repair or prevent injury. The fact that the injury occurred to a prisoner (as the majority highlights in the first line of its decision) is meaningless to our analysis. Let's change our outlook as to who was injured, but keep all other facts, dates, and times the same. The kitchen is now at the Wisconsin State Capitol and the same four connected kettles (see picture below) are in a serving line of a buffet that the public, legislators, and our supreme court justices use to obtain their lunch.
¶28 On March 4, 2014, a decorated World War II veteran was invited to the capitol for a ceremony. He arrived early and decided to get some lunch in the capitol cafeteria. While fishing a hot dog out of the kettle (the same kettle that tipped onto Jackson), the kettle, without warning, tipped and doused him with boiling water and 300 hot dogs. He was badly burned and required hospitalization, skin grafts, and was left with permanent impairment and disfigurement. As a knowledgeable citizen, he knew that immunity prevented liability unless an exception to immunity applied. The veteran made a courteous inquiry to the state as to whether, prior to March 4, 2014, the state knew of any problems with the kettle.
¶29 The state responded that the kitchen supervisor/general manager had issued numerous orders prior to March 4, 2014, that the kettles had defective gears and were prone to tipping, but for unknown reasons, the repairs were never made. Specifically, the state reported that sixteen months prior to March 4, 2014, a kitchen employee had submitted a repair order to the maintenance department which stated "gears stripped on kettles." See majority, ¶4. The state also reported that one year prior to March 4, 2014, a state maintenance worker examined all the kettles and "noticed that all of them had 'some wear.' " See id. As to the specific kettle that scalded the veteran/Jackson, a state maintenance worker wrote in the maintenance log that "[s]team trap sticks closed most of the time. Lid actuator badly worn. Ring gear starting to wear out. Kettle will not stay in place, tips a little." See id. (emphasis added). Two days after that report (and just under one year prior to the incident), the same state employee submitted a repair order stating "all 4 kettles have frozen or stripped out gears." See id.
¶30 The state further reported that just over six months prior to March 4, 2014, one of the kettles, but not the one that tipped on March 4, tipped and scalded a person. See id. , ¶5. The kitchen manager wrote an accident report that maintenance "needs to fix this kettle so it doesn't tip over." See id. The state also reported that more than four months prior March 4, 2014, another repair order was written stating "all kettles still need work as far as tipping . Can we take the lids off so they don't whack someone else in the head." See id. , ¶6 (emphasis added). Apparent from this repair order is knowledge that the state knew that all the kettles were prone to tipping and that the lids would whack the unfortunate soul in the head when the kettle inevitably did tip.
¶31 From the above facts, the majority concludes that the state had no ministerial duty to repair the specific kettle that tipped onto Jackson and that there was no "known and present danger" that the specific kettle would tip. I disagree. The maintenance department had repair orders to fix "all kettles" and "all kettles" were prone to tipping. In my opinion, all four of the kettles were a known and present danger to tip on March 4, 2014, and the state had, prior to March 4, 2014, a ministerial duty to repair the kettles. Absent repairing the kettles, the state had a ministerial duty to prevent injury.
¶32 In Voss v. Elkhorn Area Sch. Dist. , 2006 WI App 234, 297 Wis. 2d 389, 724 N.W.2d 420, we addressed the known and present danger exception. A teacher had students wear "fatal vision goggles" that replicated the effects alcohol has on the body and how it impairs a person's ability to operate in a normal manner. Id. , ¶2. While performing exercises, some of the students lost their balance, slipped, or stumbled. Id. , ¶3. One exercise involved the teacher throwing a tennis ball across the room with instructions to the students to go after the ball. Id. , ¶4. The teacher knew that there were risks inherent in the exercise, "namely that a student could lose his or her balance and fall down." Id. , ¶5.
¶33 Voss, a student wearing the goggles, took two steps, caught her foot on the leg of a desk, and tripped causing her mouth to hit the top of a desk. Id. , ¶6. Voss suffered extensive facial injuries. Id. , ¶7. When Voss sued, Elkhorn moved to dismiss on grounds of immunity. Id. , ¶10. The circuit court denied immunity finding that the "known and present danger" exception to immunity applied. Id. This court agreed.
¶34 While the government is immune "for any action that involves the exercise of discretion and judgment," there is "no immunity against liability associated with the performance of ministerial duties and 'known and compelling dangers that give rise to ministerial duties on the part of public officers or employees.' " Id. , ¶12 (citations omitted). "A dangerous situation will give rise to a ministerial duty when there exists a danger of such force that 'the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." Id. , ¶17 (citing Lodl v. Progressive N. Ins. Co. , 2002 WI 71, ¶38, 253 Wis. 2d 323, 646 N.W.2d 314 ). The duty arises "by virtue of particularly hazardous circumstances-circumstances that are both known to the [state] or its officers and sufficiently dangerous to require an explicit, non-discretionary ... response," i.e., it is an "accident[ ] waiting to happen." Id. , ¶¶17, 19 (citation omitted).
¶35 When examining immunity we do not require knowledge of the specific cause of the injury, rather, we determine knowledge from the general danger of the circumstances. Heuser v. Community Ins. Corp. , 2009 WI App 151, ¶22, 321 Wis. 2d 729, 774 N.W.2d 653. Stated another way, we do not look at how and why Jackson was burned; we examine whether the state knew prior to March 4, 2014, that the kettles were dangerous in their condition. We focus on the action (or inaction) that could cause injury, not on the injury that occurred. Id. The theory of the "known danger" exception is that "when a danger known to a public officer or employee is of such a compelling force, it strips that person of discretion or judgment and creates an absolute, certain and imperative duty to act."Id. , ¶23.
¶36 Like the teacher in Voss , the state was on notice of the danger that "all" of the kettles were prone to tipping and were in need of repair as "all" the kettles had defective, worn gears. The state was aware on March 4, 2014, that one of the defective kettles had already tipped and burned a person. The kitchen manager made repeated requests to the state prior to March 4, 2014, to fix the kettles, yet the state did not fix them even after someone was burned. As in Voss , there was only one course of action available: fix the problem or stop the activity.[1] "[T]he step of actually taking a precautionary measure is ministerial." Heuser , 321 Wis. 2d 729, ¶32.
¶37 Whether Jackson is a prisoner or saint is immaterial. If the state desires immunity, then it must abide by the rules of immunity. The state had a ministerial duty to repair the kettles or, absent repair, a ministerial duty to prevent the kettles from tipping. The law may be that "the king can do no wrong," but it is also the law that the king will be held to answer if the king knowingly disregards the safety of his subjects.

Also see our supreme court's recent decision in Engelhardt v. City of New Berlin , 2019 WI 2, --- Wis. 2d ----, --- N.W.2d ----, for further support that the known danger exception applies in this case.