Clara M. ROLLAND, Plaintiff-Respondent,

MILWAUKEE COUNTY DEPT. OF HUMAN SERVICES, Plaintiff,

v.

COUNTY OF MILWAUKEE, Milwaukee Transport Services, Inc. and John Doe, Defendants-Appellants,

Donna SHALALA, Defendant.

Court of Appeals

*No. 99–1913. Submitted on briefs May 9, 2000.—Decided December 5, 2000.*

2001 WI App 53

(Also reported in 625 N.W.2d 590.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Thomas A. Cabush* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. Finerty* and *David J. Bischmann* of *Hausmann-McNally, S.C.* of Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. Milwaukee County and Milwaukee Transport Services, Inc., appeal from the trial court's denial of their motion for summary judgment, which asserted that they were immune from liability as a result of WIS. STAT. § 893.80(4). We granted their petition to appeal from a non-final order. We affirm.

## I.

¶ 2. Milwaukee Transport Services operates public transit bus services for Milwaukee County, as the County's agent. Clara M. Rolland claims that she was injured when she was a passenger on one of Milwaukee Transport's buses. She was on the bus in her motorized handicapped scooter when, as alleged in her complaint, the bus turned, causing her scooter to suddenly roll and tip over. She claims that the bus driver negligently secured her scooter, in violation of guidelines for drivers issued by Milwaukee Transport. The guidelines

applicable to this case were in a series of bulletins, the material parts of which we quote.

¶ 3. One bulletin, headed "wheelchair securement" (uppercasing, bolding, and underlining omitted), directed:

> The use of restraining straps is mandatory for all wheelchairs on [Milwaukee Transport] buses. Customer refusal to have their wheelchair strapped to the floor of the bus will result in transportation denial.
>
> Operators should explain that this is being done for their safety and is according to company procedure. If problems exist, contact the Dispatcher for further instructions.

Another bulletin emphasized that passengers in motorized wheelchairs had the same right to use public transportation as others, and that the use of straps was mandatory. It advised bus drivers to "explain that the use of restraining strips is to be enforced for their safety." The bulletin also instructed how the wheelchairs were to be secured:

**SECURING A WHEELCHAIR**

> Whenever possible, attach restraints to the *frame* of a wheelchair instead of through spokes in the wheels. In some instances, damage has been reported to the surrounding spokes of restraining belts that were attached to wheels.

> The frame on *most* wheelchairs can be found on the metal bars that are found closes [sic] to the wheels. **As a general rule, attach restraining belts towards the lower portions of wheelchairs, and as close to the wheels as possible.** Three wheel "scooters", for example, have little support on the extension directly under the seat. Again,

**THINK "LOW" AND "CLOSE TO THE WHEELS"**
**before** beginning securement.

(All emphasis in the original.) It also noted that after unsecuring the wheelchair, the driver should "[r]eturn all movable belts to their designated compartments."

¶ 4. In support of their motion for summary judgment, Milwaukee Transport and the County submitted an affidavit executed by the driver of Rolland's bus. In that affidavit, he averred that he tried to secure Rolland's scooter with more than one strap:

> I then attempted to place one of the safety straps around Ms. Rolland's body which is my normal practice. However, her body was too big for the strap to go around her. I then took several moments to think about how to secure her on the bus. I decided to place one strap through the left arm of the scooter and a second available strap through the right arm of the scooter. I then tightened the straps and secured the strap ends into the proper fasteners. In my judgment, this was the best means available to secure Ms. Rolland and her scooter on the bus.

The driver's affidavit indicated that it took him "approximately five to ten minutes to get Ms. Rolland on the bus and to secure the scooter."

¶ 5. Rolland had a different recollection of the attempted securing of her scooter. In her affidavit, she averred that the driver was wholly uncooperative, used only one strap, and told her that he "did not really know how to secure the scooter." When, according to her affidavit, she attempted to tell him that he had to use two straps—"that he had to fasten the front of the scooter with another belt, like the other bus drivers had done on my prior bus rides[,] . . . he was not interested in listening to my suggestion[,]" but, rather, told

219

her " 'you ain't going nowhere,' and went back to his seat." She also denied that the driver tried to place a belt around her body.

¶ 6. The trial court rejected the defendants' contention that WIS. STAT. § 893.80(4) was a bar of immunity between them and Rolland's claim, holding that Milwaukee Transport had a ministerial duty to make certain that passengers in scooters could safely ride the buses, and that, in its view, "the act of securing [Rolland's scooter] on the bus is a ministerial act and therefore there is liability for not doing it safely." Although we affirm the trial court's denial of the defendants' motion for summary judgment, we do so for a different reason. *See State v. Holt*, 128 Wis. 2d 110, 124–125, 382 N.W.2d 679, 687 (Ct. App. 1985) (an appellate court may affirm a trial court's correct ruling irrespective of the trial court's rationale).

## II.

■■■■■

¶ 7. Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. *See* WIS. STAT. RULE 802.08(2); *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.,* 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Of course, "summary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977). Our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

¶ 8. WISCONSIN STAT. § 893.80(4), as material here, provides:

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Under this provision, "[p]ublic officers or employees" as well as their employing entities "enjoy immunity from liability for injuries resulting from the performance of any discretionary act within the scope of their governmental employment." *Kierstyn v. Racine Unified School Dist.,* 228 Wis. 2d 81, 88, 596 N.W.2d 417, 421 (1999). Immunity does not apply if the act or omission on which a claim for liability is predicated is ministerial rather than discretionary. *See Ottinger v. Pinel,* 215 Wis. 2d 266, 273, 572 N.W.2d 519, 521 (Ct. App. 1997).[1] Additionally, "it is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from

---

[1] There are three other, closely related exceptions to governmental immunity: 1) when there is a danger that is so " 'compelling and known to the officer and is of such force that the public officer has no discretion not to act.' " *Kierstyn v. Racine Unified School Dist.,* 228 Wis. 2d 81, 95–96, 596 N.W.2d 417, 425 (1999) (quoted source omitted); 2) where, in a "medical context," the act or omission by the governmental employee is " 'professional' in nature" rather than "governmental." *Id.,* 228 Wis. 2d at 97, 596 N.W.2d at 425; and 3) where "a public officer engages in negligent conduct that is 'malicious, willful and intentional.' " *Id.,* 228 Wis. 2d 90 n.8, 596 N.W.2d at 422 n.8 (quoted source omitted). None of the parties asserts that any of these exceptions is material here.

liability." *C.L. v. Olson,* 143 Wis. 2d 701, 716, 422 N.W.2d 614, 619 (1988).

¶ 9. A governmental employee's duty must have certain attributes before that duty will be considered to be ministerial rather than discretionary:

> "A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion."

*Kierstyn,* 228 Wis. 2d at 91, 596 N.W.2d at 422 (quoted source omitted). Stated another way, "[a] discretionary act involves the exercise of judgment in the application of a rule to specific facts." *Willow Creek Ranch, L.L.C. v. Town of Shelby,* 2000 WI 56, ¶ 25, 235 Wis. 2d 409, 425, 611 N.W.2d 693, 700.

¶ 10. Rolland argues that there are three reasons why Milwaukee Transport's obligations to ensure her safety were ministerial and not discretionary. She claims that drivers had a non-discretionary duty to use more than one belt; that drivers had a non-discretionary duty to know how to properly and safely secure motorized wheelchairs or scooters; and that if there was a problem with properly securing a wheelchair or scooter, drivers had a non-discretionary duty to call their dispatcher for help. We disagree.

¶ 11. Each of the bases on which Rolland relies requires "the exercise of judgment or discretion rather than the mere performance of a prescribed task." *See Spencer v. County of Brown,* 215 Wis. 2d 641, 652, 573 N.W.2d 222, 226–227 (Ct. App. 1997) (how to comply with mandatory duty to keep premises safe imposed by the safe-place statute is discretionary, WIS. STAT.

§ 101.11); *see also Kierstyn,* 228 Wis. 2d at 93, 596 N.W.2d at 423 (act is ministerial if circumscribed by specific obligations); *Kimps v. Hill,* 200 Wis. 2d 1, 14–15, 546 N.W.2d 151, 157–158 (1996) (professor's duty to provide safe equipment, and safety officer's duty to investigate accidents did not impose ministerial duty on either in the way to carry out their responsibilities); *Ottinger,* 215 Wis. 2d at 276, 572 N.W.2d at 522 (guards have duty to prevent escape by prisoners; method of prevention is discretionary: "Despite the general duty to prevent an escape, correctional officers are given wide latitude in determining how to handle an escape, how much force, if permitted, is necessary to prevent an escape and at what point to stop the pursuit."). Indeed, the Milwaukee Transport bulletins that Rolland argues impose a ministerial duty recognize, by use of such terms as "whenever possible" and "[a]s a general rule," that it is not possible to distill the method of ensuring the safety of wheelchair passengers into a series of recipe-like steps—nothing in the bulletins attempts to mandate specific steps so that "nothing remains for judgment or discretion." *See Kimps,* 200 Wis. 2d at 15, 546 N.W.2d at 158. The mere fact that the driver might have been negligent in the way he secured Rolland and her scooter does not abrogate the governmental immunity conferred on Milwaukee Transport and the County by WIS. STAT. § 893.80(4). *See id.,* 200 Wis. 2d at 11, 546 N.W.2d at 156 ("Just because a jury can find that certain conduct was negligent does not transform that conduct into a breach of a ministerial duty.").

■

¶ 12. Our conclusion that how a driver secures a passenger, or when the driver should seek assistance from a dispatcher, is discretionary and not ministe-

rial—requiring, as those decisions do, the exercise of judgment—does not end the matter. Rather, giving Rolland the benefit of the doubt, as we must where summary judgment is sought, *see Lecus,* 81 Wis. 2d at 189–190, 260 N.W.2d at 243–244, her version of the incident raises an issue of material fact: namely whether the driver ignored his mandatory duty not to drive the bus with a wheelchair or scooter passenger aboard unless the passenger was secured. *See Cavanaugh v. Andrade,* 202 Wis. 2d 290, 301–305, 550 N.W.2d 103, 108–110 (1996) (city violated ministerial duty by not drafting written policy governing police pursuit of fleeing suspects that contained all the elements required by statute, even though the weight to be given to each element in the overall policy would be discretionary). By "ignored," we do not mean to imply that a total disregard must be shown; proving a cavalier, mere lip-service payment or perfunctory nod to a mandatory duty that the law either imposes or recognizes would be sufficient to show that the duty was ignored. Stated another way, the driver had a mandatory, ministerial duty to ensure, to the best of his ability and judgment, that Rolland was safely secured on his bus; how he fulfilled that duty required the exercise of his judgment and was therefore discretionary. *See C.L.,* 143 Wis. 2d at 716, 422 N.W.2d at 619 ("[I]t is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from liability.").

¶ 13. We affirm the trial court's denial of the defendants' motion for summary judgment, and remand the matter for trial. At the trial, the factfinder should determine whether the driver ignored his duty to assure, to the best of his ability and judgment, that

Rolland was secured before he drove his bus. As we have seen, however, the mere fact that the driver might have been negligent in carrying out that duty is not material to the issue of whether he ignored it.

*By the Court.*—Order affirmed and cause remanded.