COURT OF APPEALS
DECISION
DATED AND FILED

July 2, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP713**

Cir. Ct. No. 2021CV111

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

VICKI PFEIFER,

PLAINTIFF,

SECURITY HEALTH PLAN OF WISCONSIN INC.,
BADGERCARE PLUS MEDICAID MANAGED CARE PROGRAM,
NETWORK HEALTH PLAN AND
WISCONSIN DEPARTMENT OF HEALTH SERVICES,

INVOLUNTARY-PLAINTIFFS,

V.

SECURA INSURANCE A MUTUAL COMPANY AND S.D. ELLENBECKER INC.,

DEFENDANTS-APPELLANTS,

CITY OF MERRILL AND
LEAGUE OF WISCONSIN MUNICIPALITIES MUTUAL INSURANCE,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Lincoln County: ROBERT R. RUSSELL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. S.D. Ellenbecker, Inc., and Secura Insurance[1] appeal from a circuit court order granting summary judgment and dismissing all claims in this lawsuit against the City of Merrill and its insurer, League of Wisconsin Municipalities Mutual Insurance.[2] The City hired Ellenbecker to construct and repair sidewalks throughout the City. Before the project was complete, Vicki Pfeifer was injured when she tripped and fell on some spilled concrete left on one of the City's sidewalks. Pfeifer filed this negligence action against the City and Ellenbecker, among others.

¶2 The City moved for summary judgment, arguing that it was entitled to immunity under WIS. STAT. § 893.80(4) (2021-22).[3] Both Ellenbecker and Pfeifer opposed the City's motion, arguing that exceptions to immunity applied. The circuit court disagreed and granted the City's motion. We conclude that the City is immune from this suit under § 893.80(4), no exceptions to the City's

---

[1] For ease of reading, we will refer to these parties collectively as "Ellenbecker."

[2] For ease of reading, we will refer to these parties collectively as "the City."

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

immunity under § 893.80(4) apply, and the court properly granted summary judgment to the City. Accordingly, we affirm.

## BACKGROUND

¶3 The City contracted with Ellenbecker to construct and repair sidewalks throughout the City in 2018, and the work was performed from July until September of that year. Pursuant to the "Contract for M-2-2018 Concrete Maintenance" between the City and Ellenbecker (the contract), Ellenbecker was charged with "at all times keep[ing] the premises free from accumulations of waste material or rubbish caused by [its] employees or work," and it was required to post signage, guards, barriers, and lighting in the construction area until the work was "accepted" by the City. The City did not plan to perform its final inspection of Ellenbecker's work until all of it was completed.

¶4 As pertinent to this appeal, Ellenbecker replaced multiple sidewalk squares in front of 804 Grand Avenue in Merrill, Wisconsin. While replacing the sidewalk squares, Ellenbecker spilled a small amount of wet concrete on a part of the sidewalk that was not being replaced, and the concrete was left to harden, creating a raised obstruction (hereinafter, the spilled concrete).

¶5 On August 22, 2018, Pfeifer was walking on the sidewalk in front of 804 Grand Avenue—which was open for public use—when she tripped on the spilled concrete and fell onto the sidewalk. As a result, Pfeifer filed suit against both the City and Ellenbecker, among others, claiming that their alleged negligence caused her severe injuries.

¶6 The City moved for summary judgment, arguing that it was statutorily immune from liability under WIS. STAT. § 893.80(4) and that none of

the exceptions to immunity applied. Both Pfeifer and Ellenbecker opposed the City's motion on the basis that two exceptions to immunity—ministerial duty and known and compelling danger—applied to allow Pfeifer's negligence suit against the City to continue. *See* ***Lodl v. Progressive N. Ins. Co.***, 2002 WI 71, ¶24, 253 Wis. 2d 323, 646 N.W.2d 314.

¶7    After briefing, the circuit court held a nonevidentiary hearing on the City's motion and orally granted summary judgment to the City.[4]  According to the court, WIS. STAT. § 893.80(4) "presumes that the City of Merrill is entitled to immunity for an accident like this." The court rejected Pfeifer's and Ellenbecker's arguments that the "law" presented by the parties imposed a ministerial duty upon the City that it failed to fulfill. It further determined that the known and compelling danger exception did not apply because "Ellenbecker and Pfeifer have not shown the [c]ourt that the alleged danger was known to the City of Merrill." Ellenbecker appeals.[5]

## DISCUSSION

¶8    The issue presented in this appeal is whether the City is entitled to governmental immunity or whether an exception to governmental immunity applies. WISCONSIN STAT. § 893.80(4) "immunizes municipalities from liability arising out of 'acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions,'" which our supreme court "has consistently interpreted … [as] any acts that involve the exercise of discretion." ***Engelhardt v.***

---

[4] The circuit court later entered a written order dismissing all of Pfeifer's claims against the City with prejudice and with costs.

[5] Pfeifer did not appeal the circuit court's decision on summary judgment.

*City of New Berlin*, 2019 WI 2, ¶¶21-22, 385 Wis. 2d 86, 921 N.W.2d 714 (citation omitted). "The doctrine of governmental immunity 'is founded upon policy considerations that strike a balance between the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.'" *Pinter v. Village of Stetsonville*, 2019 WI 74, ¶33, 387 Wis. 2d 475, 929 N.W.2d 547 (alteration in original; citations omitted). "Those policy considerations focus largely on the protection of the public purse against legal action and on the restraint of public officials through political rather than judicial means." *Id.* Section 893.80(4) does not, however, provide immunity under all circumstances, and our supreme court has recognized four exceptions to governmental immunity. *Engelhardt*, 385 Wis. 2d 86, ¶29; *Lodl*, 253 Wis. 2d 323, ¶24.

¶9 This case comes before us pursuant to the City's successful motion for summary judgment. Appellate review of an order granting summary judgment is de novo, and we apply the same methodology as the circuit court, while benefiting from the court's analysis. *Lodl*, 253 Wis. 2d 323, ¶15; WIS. STAT. § 802.08(2). We also review the application of WIS. STAT. § 893.80(4) and its exceptions to a set of facts de novo. *See Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999). We stress that when determining whether governmental immunity applies, *we assume that the City was negligent*, "focusing instead on whether the [City's] action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies." *See Lodl*, 253 Wis. 2d 323, ¶17. In other words, arguments to this court advocating that the City was or was not negligent, as "proof" that an exception to immunity applies, have no place

before us and will not prevent summary judgment. *See Meyers v. Schultz*, 2004 WI App 234, ¶10, 277 Wis. 2d 845, 690 N.W.2d 873.

¶10 As it did in the circuit court, Ellenbecker argues that both the ministerial duty and the known and compelling danger exceptions to governmental immunity permit Pfeifer's negligence suit to proceed against the City. *See Lodl*, 253 Wis. 2d 323, ¶24. For the reasons that follow, we conclude that the City is immune from liability for Pfeifer's negligence claims under WIS. STAT. § 893.80(4) because no ministerial duty imposed by law was violated and because no known and compelling danger gave rise to a ministerial duty.

## I. Ministerial Duty

¶11 "The ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter." *Lodl*, 253 Wis. 2d 323, ¶25. "A duty is ministerial if it is 'absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" *Pinter*, 387 Wis. 2d 475, ¶41 (citations omitted). "In contrast, a discretionary act 'involves the exercise of judgment in the application of a rule to specific facts.'" *Id.* (citation omitted).

¶12 Before we address Ellenbecker's specific arguments, we must first examine its general claim that the circuit court erred by concluding that governmental immunity is the rule, rather than the exception, when it stated that WIS. STAT. § 893.80(4) "presumes" that the City is entitled to immunity. Citing *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), and *Legue*

*v. City of Racine*, 2014 WI 92, ¶4, 357 Wis. 2d 250, 849 N.W.2d 837, Ellenbecker asserts that "[w]hile there are limited circumstances under which immunity from liability applies, the law in Wisconsin is clear that for municipal government actors 'the rule is liability—the exception is immunity.'"

¶13    As we have outlined previously in a prior case, "[u]nder the common law and up through the 1960s, the government was immune from tort liability as a general rule," but then "[i]n *Holytz* …, our supreme court abrogated the common law government immunity doctrine." *Knoke v. City of Monroe*, 2021 WI App 6, ¶¶13, 16, 395 Wis. 2d 551, 953 N.W.2d 889 (2020). "*Holytz* announced that 'henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity.'" *Knoke*, 395 Wis. 2d 551, ¶16 (quoting *Holytz*, 17 Wis. 2d at 39). Our supreme court "clarified, however, that governmental entities continued to be immune from suit when they exercised their 'legislative or judicial or quasi-legislative or quasi-judicial functions,'" *Knoke*, 395 Wis. 2d 551, ¶16 (quoting *Holytz*, 17 Wis. 2d at 40), which language the legislature later adopted when it enacted the predecessor to WIS. STAT. § 893.80, *see* WIS. STAT. § 331.43(3) (1963-64); 1963 Wis. Laws, ch. 198; *Knoke*, 395 Wis. 2d 551, ¶17 & n.3.

¶14    Over the following decades, our supreme court "consistently interpreted 'acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions' to include any acts that involve the exercise of discretion." *See Pinter*, 387 Wis. 2d 475, ¶31 (citing *Lifer v. Raymond*, 80 Wis. 2d 503, 511-12, 259 N.W.2d 537 (1977)). In so doing, our supreme court has acknowledged that the general rule of liability adopted in *Holytz* has effectively been abrogated. *See Pries v. McMillon*, 2010 WI 63, ¶17, 326 Wis. 2d 37, 784 N.W.2d 648 (explaining that the *Holytz* "rule, since abrogated by case law,

provided that in cases alleging negligent acts by public officials, liability was the rule and governmental immunity was the exception"); *see also **Engelhardt***, 385 Wis. 2d 86, ¶70 (Dallet, J., concurring) ("The result of this court's adoption of the pre-***Holytz***, pre-WIS. STAT. § 893.80(4) language conditioning immunity on the performance of discretionary acts has been a return to governmental immunity as the rule and liability as the exception."); ***Melchert v. Pro Elec. Contractors***, 2017 WI 30, ¶57, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting) (noting that "[c]riticism of this court's interpretation of [§] 893.80(4) is well-documented" and collecting cases). Nevertheless, recently and repeatedly, the court has rejected invitations to "return to the plain text of § 893.80(4) and adhere to [the] court's stated purpose for the limited exception of governmental immunity." ***Pinter***, 387 Wis. 2d 475, ¶¶34-38; ***id.***, ¶¶75-76 (Dallet, J., dissenting); ***Engelhardt***, 385 Wis. 2d 86, ¶¶21-28. Thus, the circuit court did not err by suggesting that the City was presumptively entitled to immunity.

¶15 Within this same argument, Ellenbecker also challenges what it calls the "oft-cited definition of ministerial duty articulated initially in" ***Meyer v. Carman***, 271 Wis. 329, 332, 73 N.W.2d 514 (1955). Ellenbecker asserts that "[r]ecent" decisions, such as ***Legue*** and ***Pries***, have distinguished ***Meyer*** and "clarified … that governmental immunity does not attach merely because the conduct in question involves elements of discretion" because a lack of "discretionary details" or a failure to "dictate each precise undertaking the government actor must implement" "did not prevent the formation of a ministerial

duty" in those cases.[6]  *See* ***Legue***, 357 Wis. 2d 250, ¶131; ***Pries***, 326 Wis. 2d 37, ¶3; ***id.***, ¶¶77, 80 (A.W. Bradley, J., dissenting).

---

[6] In ***Legue***, a collision occurred between the plaintiff and a police officer responding to an emergency call to the scene of an accident.  ***Legue v. City of Racine***, 2014 WI 92, ¶2, 357 Wis. 2d 250, 849 N.W.2d 837.  At issue was the interplay between WIS. STAT. § 893.80(4) immunity and WIS. STAT. § 346.03(5), which imposes a duty on officers to operate an authorized emergency vehicle "with due regard under the circumstances for the safety of all persons." ***Legue***, 357 Wis. 2d 250, ¶6.  Our supreme court determined that the officer's acts were "outside the scope of the immunity statute." ***Id.***, ¶133.  In particular, the court stated:

> Today's holding is in keeping with sister state jurisdictions with statutes similar to Wisconsin's that view the operation of a vehicle as a paradigmatic ministerial act.  These jurisdictions tend to hold that immunity does not attach to negligent operation on the part of an emergency vehicle operator.
>
> Consequently, we view our discretionary-ministerial jurisprudence as directing us to hold that immunity does not apply to the police officer's conduct in the instant case simply because she made the discretionary decision to respond to an emergency call.

***Id.***, ¶¶134-35 (footnotes omitted).

In ***Pries***, a group of inmates were dismantling horse stalls at the Wisconsin State Fair Park, and one of the inmates was injured when a piece of stall fell on him.  ***Pries v. McMillon***, 2010 WI 63, ¶¶4, 6, 326 Wis. 2d 37, 784 N.W.2d 648.  Our supreme court determined that the "two-page written procedure in effect at the time of the accident setting forth the proper method of disassembling the horse stalls" fell "within the range of documents that could serve as a basis for a ministerial duty." ***Id.***, ¶¶9, 32.  According to the court, the language in the procedure to "[a]lways have someone holding up the piece that you are taking down," along with the understanding that the procedure was to be followed each time the stalls were dismantled and "the nature of the work and the context in which it is performed," gave rise to a ministerial duty. ***Id.***, ¶¶37-38 (alteration in original).

(continued)

¶16 Our review of the case law, however, confirms that the definition of a ministerial duty articulated in *Meyer* remains the standard—as outlined in paragraph 11 above—that the courts of this state currently apply. *Compare Meyer*, 271 Wis. at 332 *with Pinter*, 387 Wis. 2d 475, ¶31; *see also Engelhardt*, 385 Wis. 2d 86, ¶32 ("In Wisconsin, the test for determining whether a duty is ministerial or discretionary was articulated in *Meyer* ...."). Nothing in *Legue* or *Pries* modifies or limits that definition. Thus, Ellenbecker's argument that the courts' decisions in *Legue* and *Pries* *changed* the definition of ministerial duty is incorrect.[7]

### a. The Contract

¶17 Moving to Ellenbecker's specific arguments, Ellenbecker identifies several sources of "law" that it claims created a ministerial duty. "The first step in

---

Ellenbecker also cites *Domino v. Walworth County*, 118 Wis. 2d 488, 491, 347 N.W.2d 917 (Ct. App. 1984), for its argument that "simply allowing for the exercise of discretion does not suffice to bring the actions under the blanket of immunity under WIS. STAT. § 893.80(4), because that would effectively eviscerate the general rule of municipal liability." There, we concluded that the county did not enjoy immunity for the actions or omissions of its sheriff's department dispatcher where the dispatcher received a report of a fallen tree across a public road and failed to ensure, after one officer was diverted to an accident scene, that another officer was assigned to investigate the tree or inform the municipality. *Domino*, 118 Wis. 2d at 490. However, we determined that the known and compelling danger exception, rather than the ministerial duty exception, applied. *Id.* at 491. Thus, the *Domino* court's discussion of discretion in the context of the known and compelling danger exception has no impact on our current understanding of the ministerial duty exception.

[7] Although Ellenbecker argues that the circuit court erred by presuming that immunity applied, it does not appear to argue that the City's action or inaction at issue in this case did not involve the exercise of discretion such that WIS. STAT. § 893.80(4) would not even apply. Instead, it appears to muddle the use of the term "discretion" as it is used to determine which acts of a municipality qualify under § 893.80(4) and as it is used within the definition of a ministerial duty. These are two separate analyses: one focusing "on whether the [City's] action (or inaction) upon which liability is premised is entitled to immunity under the statute" and the other focusing on "whether one of the judicially-created exceptions to immunity applies." *See Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶17, 253 Wis. 2d 323, 646 N.W.2d 314.

the ministerial duty analysis is to identify a source of law or policy that imposes the alleged duty." *American Fam. Mut. Ins. Co. v. Outagamie County*, 2012 WI App 60, ¶13, 341 Wis. 2d 413, 816 N.W.2d 340. "Where there is a written law or policy defining a duty, we naturally look to the language of the writing to evaluate whether the duty and its parameters are expressed so clearly and precisely, so as to eliminate the official's exercise of discretion." *Pries*, 326 Wis. 2d 37, ¶26. "'Law' in this context means, at a minimum, an act of government," including "statutes, administrative rules, policies or orders[,]" "plans adopted by a governmental unit," and "contracts entered into by a governmental unit." *Schultz*, 277 Wis. 2d 845, ¶19 (alteration in original; citations omitted).

¶18    Ellenbecker first argues that its contract with the City created a ministerial duty.[8]  According to Ellenbecker, the City had "an overarching and non-delegable duty to repair and maintain its public sidewalks to ensure their safety.  As part of that general duty, the City developed the sidewalk project at issue and drafted [the contract] between the City and Ellenbecker, which incorporated ministerial specifications."  (Citation omitted.)  Section 12 of the

---

[8] The City asserts that, "[a]t its core, Ellenbecker's argument [on appeal] is that the City had a ministerial duty to inspect Ellenbecker's work prior to completion of the entire project."  In its reply, Ellenbecker argues that the City's statement here is "erroneous[]" because "[f]ailing to inspect is but one of the multiple ministerial duties breached by the City."

We pause to note that at many points in Ellenbecker's briefing, it is unclear what exact ministerial duty Ellenbecker is claiming that the City violated.  For example, Ellenbecker cites the source of law that it claims imposed a ministerial duty, but it does not always clearly and specifically identify the duty that it claims is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *See Pinter v. Village of Stetsonville*, 2019 WI 74, ¶41, 387 Wis. 2d 475, 929 N.W.2d 547 (citation omitted).  We have done our best to identify and address Ellenbecker's arguments.  To the extent we have failed to do so, we conclude they were insufficiently developed. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

contract, explains Ellenbecker, "incorporated detailed drawings and specifications" and "provided that 'the work shall be executed in strict conformity with the plans and specifications.'" In support of its position, Ellenbecker refers to a drawing, included with the contract, containing written specifications, stating that "each sidewalk slab was to be five feet wide, four inches thick, and have a slope toward the street of one-quarter inch per foot." It further asserts, without reference to any specific wording in the contract or the drawing, that "[t]he sidewalk was also required to have a uniform walking surface free of obstructions."

¶19    We conclude that nothing in § 12 of the contract created a ministerial duty for the City to act. First, § 12 provides in its entirety: "The work shall be executed in strict conformity with the plans and specifications and the [c]ontractor shall do no work without proper drawings and specifications." Accordingly, as the City argues, "[t]his provision clearly creates a requirement that [*Ellenbecker*] complete the work according to the plans and specifications approved by the City." (Emphasis added.) The contract requires that "[t]he work" be "executed" in a certain manner, but the City was not the entity doing the work; Ellenbecker was. Therefore, § 12 of the contract does not prescribe performance of a specific task to *the City*.

¶20    In response, Ellenbecker argues that the City "cannot avoid liability by attempting to transfer its liability to a third-party contractor," or "[s]tated differently, the entity that has a non-delegable duty cannot assert that another to which the duty was purportedly delegated is to be substituted as the primary defendant." In support of its position, Ellenbecker cites *Hagerty v. Village of Bruce*, 82 Wis. 2d 208, 213-14, 262 N.W.2d 102 (1978), and *Barry v. Employers Mutual Casualty Co.*, 2001 WI 101, ¶42, 245 Wis. 2d 560, 630 N.W.2d 517. In

*Hagerty*, the question was whether property owners were liable for injuries resulting from failing to clear snow and ice from a public sidewalk adjacent to their property where a municipal ordinance so required. *Hagerty*, 82 Wis. 2d at 211-12. Our supreme court concluded that property owners could not be held liable under those circumstances because the duty to maintain the sidewalk belonged to the municipality. *Id.* at 214.

¶21 *Barry* involved Wisconsin's safe place statute. *Barry*, 245 Wis. 2d 560, ¶1. There, the plaintiff was injured when he fell down stairs that a subcontractor had repaired, and an investigation revealed that the vinyl strip that had been installed to secure the carpeting to the stairs had become loose. *Id.*, ¶¶5, 7-8. Although there were other issues on appeal, our supreme court specifically held that the corporate property owner's "duty under the safe place statute is non-delegable, and therefore [the property owner] must answer to [the plaintiff] for any violation of that duty regardless of whether another party contributed to the violation." *Id.*, ¶43.

¶22 We agree with the City that the issue of non-delegable duties is not relevant to the immunity analysis. First, the cases cited by Ellenbecker are inapposite. Neither case even mentions governmental immunity and, therefore, cannot stand for the proposition that immunity is abrogated based on a governmental entity's discretionary acts in the performance of a non-delegable duty. Ellenbecker does not identify any legal authority in support of that proposition.

¶23 Second, the City concedes that it has a duty to maintain its sidewalks, but it does not argue that it is immune from liability *because* it delegated its duty to Ellenbecker. Instead, the City asserts that it is immune

because replacing the sidewalks—or retaining Ellenbecker to do so—involved an exercise of discretion, and no exceptions to immunity apply. As the City explains, "[t]he City is imbued with discretion as to *how* to maintain its sidewalks" and "could hire and pay a contractor to complete the construction." The fact that the contractor possibly breached its contract or was allegedly negligent in completing the construction does not abrogate the City's immunity. Thus, the City claims, while "[t]he [c]ourt may assume that the City was negligent in choosing this contractor and in supervising [Ellenbecker]," "[t]he City is still entitled to immunity." We agree.[9]

---

[9] Ellenbecker makes an additional argument that because "the City voluntarily created specifications for its sidewalks with such certainty that" "[t]he City need only follow and enforce its straightforward drawing," a "contractually-created ministerial duty was breached." Again, the City was not required to "follow" the "drawing" under the terms of the contract; Ellenbecker was. Thus, we do not address the cases cited by Ellenbecker for the proposition that if government entities "choose to act, they faced a specific legal obligation to do so in a prescribed manner."

Instead, the City's decisions to hire Ellenbecker, to choose the design specifications for the sidewalk project, and to create the drawing included with the contract were legislative or quasi-legislative acts. *See Showers Appraisals, LLC v. Musson Bros.*, 2013 WI 79, ¶¶26, 38, 350 Wis. 2d 509, 835 N.W.2d 226 ("Legislative and quasi-legislative functions generally refer to those policy choices made in an official capacity, e.g., when a governmental entity chooses one project design over another."). Ellenbecker essentially admits this fact by arguing that "the City's decision to develop the subject sidewalk project was discretionary," but Ellenbecker then claims that "once that project was implemented, following the design drawings and specifications of that project was ministerial." We fail to see how Ellenbecker's possible faulty workmanship equates to the City's alleged failure to follow the design specifications in the contract, and beyond arguing that the City had a non-delegable duty, which we addressed above, Ellenbecker does not support that claim with legal authority.

(continued)

14

¶24     Ellenbecker also relies on *Umansky v. ABC Insurance Co.*, 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1, to support its argument that § 12 of the contract imposes a ministerial duty on the City. In *Umansky*, the plaintiff fell to his death at Camp Randall Stadium while working on a platform located eight feet above the ground. *Id.*, ¶1. At the time, no railing protected the platform, despite the state legislature adopting federal safety regulations requiring "that railings be installed on platforms like the one from which [the plaintiff] fell." *Id.* A question on appeal was whether immunity applied or whether the federal regulation imposed a ministerial duty. *Id.*, ¶2. The federal regulation at issue provided, in part, that "[e]very open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing." *Id.*, ¶16. Our supreme court concluded that this "highly specific safety regulation in force under Wisconsin law … created a ministerial duty such that there is an exception to the ordinary rule of immunity." *Id.*, ¶¶16-18.

¶25     Ellenbecker correlates the safety requirement in *Umansky* to § 12 of the contract. According to Ellenbecker, "[t]he sidewalk specifications within the

---

We also agree with the City's claim that "Ellenbecker's argument ignores the distinction between municipality and contractor when it comes to immunity." A contractor hired by a municipality, such as Ellenbecker, may also be entitled to immunity if it can demonstrate "*both* that the contractor was an agent as that term is used in [WIS. STAT.] § 893.80(4), i.e., as is expressed in the [*Estate of Lyons v. CNA Ins. Cos.*, 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996),] test, and that the allegedly injurious conduct was caused by the implementation of a decision for which immunity is available for governmental entities under § 893.80(4)." *Showers*, 350 Wis. 2d 509, ¶36; *Lyons*, 207 Wis. 2d at 457-58. As our supreme court expressed in *Showers*, "it was the governmental entity in *Lyons* that made the choice of design that allegedly was a cause of the accident"; thus, because the contractor followed the specifications of the quasi-legislative design decision, "the governmental contractor was entitled to the same level of immunity as would be accorded to the governmental entity had it been sued directly for its design choice." *Showers*, 350 Wis. 2d 509, ¶31. Importantly, however, "an allegation of negligent workmanship [by the contractor] would not have the potential for immunity under § 893.80(4) for that specific injury-causing conduct." *Showers*, 350 Wis. 2d 509, ¶39.

City's contract mandated that the cement slabs have an even and unobstructed walking surface. There was no discretion on the City's part to ignore or circumvent those ministerial requirements."

¶26 *Umansky* is unavailing. First, our supreme court determined in *Umansky* that the federal regulation was applicable under the circumstances because it applied "to public buildings of a public employer," *Umansky*, 319 Wis. 2d 622, ¶18, but we have determined above that § 12 of the contract does not impose a duty upon the City. Second, the court recognized in *Umansky* that the safety regulation was "highly specific" because it included specifications detailing under what circumstances a railing was required as well as the type of railing. *Id.*, ¶16 & n.8, ¶18. Here, however, § 12 contains only a general direction that the work be completed according to the plans and specifications. To the extent the drawing included with the contract, specifying the size and slope of each sidewalk slab, contained more detail, we agree with the City that the circumstances are entirely divergent. *Umansky* involved a platform designed in violation of the safety regulations that was not rectified and had remained that way for years, while the spilled concrete in this case was not in the City's design specifications, appears to have been caused by faulty workmanship, and was unknown to the City. The circumstances are not comparable.

¶27 Ellenbecker also identifies other alleged ministerial duties set forth in the contract based on "the mandatory 'shall' language [that] are presumed to be ministerial." In particular, Ellenbecker relies on § 11 of the contract, which provides that the City's "[i]nspector shall have general supervision and direct all work" and that the inspector "shall also have authority to reject all work and materials which do not conform to the contract." It also relies on § 14, which provides that the inspector "shall report all failure on the part of [Ellenbecker] to

fulfill the requirements of [the contract's] specifications and the contract." According to Ellenbecker, "[u]nder the contract, [the City's inspector] was tasked with [ensuring] and enforcing compliance with the contract provisions," and the inspector "failed to carry out his monitoring and inspection duties until it was too late—after [Pfeifer's] accident—which occurred nearly a month after Ellenbecker finished the sidewalk on the east side of Grand Avenue and it was opened for public use."

¶28 In support of its position, Ellenbecker cites *Turner v. City of Milwaukee*, 193 Wis. 2d 412, 535 N.W.2d 15 (Ct. App. 1995). In *Turner*, the plaintiff sued the City of Milwaukee for injuries she suffered when she was bitten by a dog that had previously attacked twelve other people. *Id.* at 416. Prior to the plaintiff's injury, the city did not "seek a court order for the dog's removal or destruction" despite an ordinance stating that "[a] vicious animal that has been involved in 2 or more previous unprovoked attacks, injuries or bites *shall* be removed from the city or destroyed." *Id.* at 416-18. The court determined that the ordinance imposed a ministerial duty on the city to seek removal or destruction of the dog. *Id.* at 420-21.

¶29 Ellenbecker asserts that "in rejecting the city's arguments, the *Turner* court held that the mandatory 'shall' language made the overarching duty ministerial, regardless of whether there were discretionary options in how to carry out that duty." *See id.* at 423. Thus, Ellenbecker claims that a duty can be ministerial even though fulfilling the duty requires the government actor to exercise his or her judgment.

¶30 We disagree that *Turner* aids our analysis here. The ordinance at issue in *Turner* not only used mandatory language, but it also defined the terms

used such that there was no discretion as to whether to seek an order for removal or destruction of the dog when the terms of the ordinance had been satisfied. *See id.* at 417. The city's claim in *Turner* that it *had* discretion was based on a state statute providing that the city "may" seek such an order, but we determined that the statute merely granted the city authority to seek the order rather than granting discretion whether to do so. *Id.* at 418.

¶31 In this case, we do not agree that the use of the word "shall" within the contract imposed a ministerial duty on the City. While "the choice of discretionary versus mandatory language is a significant factor in determining the existence of a ministerial duty," *Pries*, 326 Wis. 2d 37, ¶30, a governmental entity may have a mandatory duty but still have discretion or judgment as to the time, place, or manner in which that duty is to be performed, *see Yao v. Chapman*, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272 ("[F]or a duty to be ministerial, a public officer must be not only bound to act, but also bound by law to act in a very particular way, leaving nothing for judgment or discretion."). Thus, mandatory and ministerial are neither synonymous nor mutually exclusive.

¶32 Here, even though the contract provides that the City's inspector "shall" oversee Ellenbecker's compliance with the contract provisions, Ellenbecker has not identified any language dictating when, how, or under what circumstances those monitoring and inspection duties were to occur. Importantly, the contract does not require the City to inspect Ellenbecker's work at any specific time. In other words, the "time, mode and occasion" for the inspector's performance of the contractual duties remains within the inspector's discretion. *See Yao*, 287 Wis. 2d 445, ¶31 ("[T]he duties … suffer from a critical lack of particularity as to time, mode and occasion of their performance, an essential ingredient of a ministerial duty."). The City's inspector testified that he would

inspect the "entire project" "[a]t the end," or upon completion. Based on this record, there is no evidence that the City's inspector was *required* to perform an inspection of Ellenbecker's work prior to the completion of the project; therefore, his failure to do so prior to Pfeifer's accident did not violate a ministerial duty imposed by law.

¶33 Ellenbecker argues, however, "that lack of specificity does not preclude liability" because the City's inspector "cannot supervise, direct, inspect, report or reject the work if he never does anything." Following this logic, Ellenbecker says, the City "could completely avoid liability by simply waiting weeks, months or even years after the sidewalk was opened to the public before conducting its mandatory monitoring and inspection to assure compliance with the contract specifications. A ministerial duty cannot be ignored by inaction." In support, Ellenbecker cites *Rolland v. County of Milwaukee*, 2001 WI App 53, 241 Wis. 2d 215, 625 N.W.2d 590. There, in our discussion of what it means to "ignore[]" a mandatory duty, we explained that "we do not mean to imply that a total disregard must be shown; proving a cavalier, mere lip-service payment or perfunctory nod to a mandatory duty that the law either imposes or recognizes would be sufficient to show that the duty was ignored." *Id.*, ¶12. Ellenbecker claims that, like in *Rolland*, "it is for the jury to determine whether [the City's inspector's] cavalier approach to his mandatory duties effectively breached his overarching ministerial responsibilities."

¶34 However, here, unlike in *Rolland*, there are no disputed facts to suggest that the City's inspector might have "ignored" a mandatory duty or that, as Ellenbecker suggests, the inspector intended to wait for "weeks, months or even years" to inspect Ellenbecker's work. The evidence is that the inspector would have inspected the project upon completion.

### b. *Americans with Disabilities Act*

¶35    Next, Ellenbecker argues that "federal regulations governing public sidewalks pursuant to the Americans with Disabilities Act (ADA) also establish a ministerial duty with which the City failed to comply."[10]    According to Ellenbecker, "[s]tate and local governments must follow the requirements of the [2010] standards if the new construction or alteration at issue occurred after March 15, 2012," and the project here occurred in 2018.  *See* 28 C.F.R. § 35.151(c)(3) (2024).  The 2010 standards provide that the maximum allowable change in the vertical level on floor or ground surfaces is one-quarter of an inch. 36 C.F.R. pt. 1191, app. D § 303.2.  Ellenbecker argues that because "it is undisputed that the spilled concrete upon which Pfeifer tripped exceeded one-quarter inch in height," the City violated "the ministerial sidewalk requirements of the ADA."

¶36    Even if we assume, without deciding, that Ellenbecker correctly argues that the 2010 standards created a ministerial duty on the part of the City, the City did not violate the duty.  Ellenbecker does not claim that the City's design of the sidewalk project or that the specifications for the project provided to Ellenbecker in the contract failed to comply with the 2010 standards.  In other words, the City did not direct Ellenbecker's construction of the sidewalk to violate

---

[10] Ellenbecker explains that the United States Department of Justice published revised regulations for the ADA in September 2010. *See* U.S. DEP'T OF JUST., 2010 ADA STANDARDS FOR ACCESSIBLE DESIGN (Sept. 15, 2010), https://www.ada.gov/law-and-regs/design-standards/2010-stds/ (hereinafter, the 2010 standards).  The 2010 standards "set minimum requirements—both scoping and technical—for newly designed and constructed or altered [s]tate and local government facilities, public accommodations, and commercial facilities to be readily accessible to and usable by individuals with disabilities."

the 2010 standards because the contract did not include the spilled concrete.[11] In fact, the contract stated: "The [c]ontractor shall at all times keep the premises free from accumulations of waste material or rubbish caused by [its] employees or work …." We agree with the City that "[i]t is absurd to argue that the City violated [ADA] design standards because its contractor, unbeknownst to the City, spilled concrete on an existing sidewalk."

### c. WISCONSIN STAT. § 66.0907

¶37 Ellenbecker's next argument is that WIS. STAT. § 66.0907 "establishes an additional ministerial duty relating to public sidewalks which was violated by the City." In particular, Ellenbecker cites a portion of § 66.0907(1), which provides: "The sidewalk shall be kept clear for the use of persons on foot." Thus, Ellenbecker claims that "the City had a ministerial duty to keep the subject sidewalk clear for pedestrians" because "clear" means "free of obstructions or unwanted objects" and because "[i]t is beyond dispute that the lump of hardened concrete adhered to the sidewalk was an obstruction." As above, Ellenbecker concentrates on the statute's use of mandatory language. According to Ellenbecker, "the City opened the subject sidewalk for public use before it was 'clear' and violated the ministerial duty imposed by" § 66.0907.

¶38 We conclude that WIS. STAT. § 66.0907(1) does not create a ministerial duty. First, as noted above, the statute's use of mandatory language—i.e., "shall"—does not alone determine whether a duty is ministerial. *See*

---

[11] Again, Ellenbecker cites *Umansky v. ABC Insurance Co.*, 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1, in support of its argument. For the reasons discussed above, *Umansky* is not persuasive under the circumstances. *See supra* ¶26.

*supra* ¶31. Second, the statute's directive that the "sidewalk shall be kept clear for the use of persons on foot" does not "prescribe[] and define[] the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *See **Engelhardt***, 385 Wis. 2d 86, ¶32 (citation omitted); § 66.0907(1). Section 66.0907(1) does not affirmatively define a duty or set forth a specific task that a municipality must perform. A different interpretation would too broadly require municipalities to vigilantly monitor their sidewalks for obstructions.

¶39 Ellenbecker again identifies ***Pries***, ***Rolland***, and ***Domino*** in support of its position, but those cases are not analogous.[12] In ***Pries***, as we noted above, *see supra* note 6, our supreme court determined that the written procedure detailing the proper method for disassembling horse stalls gave rise to a ministerial duty. ***Pries***, 326 Wis. 2d 37, ¶¶32, 37-38. Ellenbecker argues that "the court held that the mandatory word 'always' did not permit discretion as to whether to have workers hold up the section of the horse stall being disassembled," and, therefore, a ministerial duty was created "despite the fact that the instructions did not 'prescribe' all details of how the stalls should be disassembled."

¶40 The holding in ***Pries*** is—like many of the cases cited by Ellenbecker—fact specific, and, therefore, the court's reasoning in ***Pries*** is not appropriately applied under the circumstances here. The disassembly procedure in ***Pries*** detailed a specific task that was to be performed and defined the time (always), mode (someone holds up the stall piece), and occasion (when the stalls

---

[12] We previously addressed why ***Rolland v. County of Milwaukee***, 2001 WI App 53, 241 Wis. 2d 215, 625 N.W.2d 590, is not persuasive, *see supra* ¶¶33-34, and why the court's reasoning in ***Domino*** is not applicable to the ministerial duty analysis, *see supra* note 6.

are taken down) for its performance. *See id.*, ¶¶37-38. Further, the court did not find that the mandatory word "always" alone created the ministerial duty; instead, the court relied on several factors, including the language of the procedure, the understanding that the procedure was to be followed each time the stalls were dismantled, and "the nature of the work and the context in which it is performed," to ultimately conclude that there was a ministerial duty. *Id.* Neither the language in Wis. Stat. § 66.0907(1) nor the circumstances in this case are similar to the instructions at issue in *Pries*.

¶41 Ellenbecker further argues that there is a statutory conflict between Wis. Stat. § 66.0907 and Wis. Stat. § 893.80(4). According to Ellenbecker, "[t]he cardinal rule of statutory construction is that when comparing a general statute to a specific statute, the specific statute takes precedence," and because § 66.0907 "specifically applies to sidewalks, whereas immunity under … § 893.80(4) is general in nature," § 66.0907 should control. Ellenbecker also observes that § 893.80(5) "recognizes that rights enforceable against a governmental entity can be created by other statutes."

¶42 We conclude that Ellenbecker's arguments regarding statutory construction are underdeveloped. Ellenbecker cites only *Kapischke v. County of Walworth*, 226 Wis. 2d 320, 595 N.W.2d 42 (Ct. App. 1999), in support of its argument, but that case involved notice provisions and, therefore, does not support Ellenbecker's contention here. *See id.* at 326-27. Further, while Ellenbecker correctly asserts that Wis. Stat. § 893.80(5) "makes clear that the legislature envisioned the possibility that other statutes might create rights or remedies that plaintiffs can pursue against governmental actors despite" § 893.80(4), *Legue*, 357 Wis. 2d 250, ¶86, Ellenbecker's argument is entirely conclusory as to how or why it is clear that the legislature intended, based on the language in Wis. Stat.

23

§ 66.0907(1), to abrogate governmental immunity. We decline to address these underdeveloped claims. *See* ***Papa v. DHS***, 2020 WI 66, ¶42 n.15, 393 Wis. 2d 1, 946 N.W.2d 17.

### d. WIS JI—CIVIL 8035

¶43 Finally, Ellenbecker claims that the "common law duty of a Wisconsin municipality for sidewalk defects" also created a ministerial duty. According to Ellenbecker, this common law duty is summarized in WIS JI—CIVIL 8035 (2021), which provides in part: "Every municipality has the duty to exercise ordinary care to construct, maintain, and repair its (highways) (sidewalks) so that they will be reasonably safe for public travel." Ellenbecker acknowledges that "immunity is now an available defense to municipalities in cases claiming a breach of the duty to keep sidewalks 'reasonably safe,'" but Ellenbecker cites the jury instruction committee's comment, stating, "The [c]ommittee believes that claims for insufficiency or want of repairs of a roadway remain viable under WIS. STAT. § 893.80(4) and ***Holytz*** …. However, governmental immunity, under ***Holytz*** … may bar some claims." WIS JI—CIVIL 8035 (2021). According to Ellenbecker, "[t]he instruction committee expressly recognized that claims based on the general duty 'remain viable.'"

¶44 We again disagree with Ellenbecker that WIS JI—CIVIL 8035 (2021) imposes a ministerial duty on the City. As the City observes, WIS JI—CIVIL 8035 (2021) outlines the duty of care to determine whether a municipality acted negligently. We reiterate that we assume that the municipality was negligent under the circumstances here; thus, the question of negligence is not before us in this case. *See* ***Schultz***, 277 Wis. 2d 845, ¶10.

¶45    Instead, we conclude the provision of the jury instruction Ellenbecker identifies lacks the specificity necessary for us to conclude that the instruction prescribes a duty that is "absolute, certain and imperative, involving merely the performance of a specific task." We reach this conclusion because the jury instruction does not "define[] the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *See Engelhardt*, 385 Wis. 2d 86, ¶32 (citation omitted). As for the jury instruction comment, the jury instruction committee admits that governmental immunity will bar some claims and does not suggest that the instruction itself creates a ministerial duty. Further, committee's pronouncements are merely persuasive, not precedential. *State v. Olson*, 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661 (1993). Accordingly, we conclude that none of the sources of law presented by Ellenbecker impose a ministerial duty on the City.

## II.  Known and Compelling Danger

¶46    Next, Ellenbecker argues that the spilled concrete represented a known and compelling danger that created a ministerial duty for the City to act. Governmental immunity does not apply where liability is based upon a failure to properly respond to a particular danger that is "compelling and known … and is of such force that the public officer has no discretion not to act." *Lodl*, 253 Wis. 2d 323, ¶34 (citation omitted). In other words, "a dangerous situation will be held to give rise to a ministerial duty only when 'there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion.'" *Id.*, ¶38 (citation omitted); *see also Engelhardt*, 385 Wis. 2d 86, ¶5 ("The known danger exception … applies when an obviously hazardous situation known to the

public officer or employee is of such force that a ministerial duty to correct the situation is created." (citation omitted)).

¶47 "In order for the known and compelling danger exception to apply, a three-step test must be fulfilled." *Pinter*, 387 Wis. 2d 475, ¶51 n.11. "First, something must occur to create a compelling danger; second, a governmental actor must find out about the compelling danger; and third, the governmental actor either takes or fails to take precautionary measures. If the government does not take precautionary measures, the known and compelling danger exception applies." *Knoke*, 395 Wis. 2d 551, ¶50. Our case law establishes that the danger must be readily apparent and "nearly certain to cause injury if not corrected"—i.e., an "accident waiting to happen." *Engelhardt*, 385 Wis. 2d 86, ¶¶44, 52 (citations omitted).

¶48 According to Ellenbecker, "the lump of hardened concrete undisputedly presented a serious danger to pedestrians which required a particularized response—its immediate removal." It asserts that because the City's inspector "immediately responded to 804 Grand Ave and chipped the excess concrete off the sidewalk with a hammer" upon learning of Pfeifer's fall,[13] the inspector's "actions were not only a recognition of the degree of danger presented, but also affirmed that it was the City's responsibility to remedy the problem." Thus, Ellenbecker claims that "[t]he only element [of the three-part

---

[13] The City's inspector testified that when he was made aware of the spilled concrete, he "immediately went out to the site, witnessed the debris being on the sidewalk, and then took a hammer out of [his] Jeep and chipped all of the debris off the sidewalk so that it was no longer a hazard."

26

test] left to satisfy the known danger exception is whether the danger was 'known' to the City, in the legal sense."

¶49 Without reaching the other elements of the three-step test, we conclude that Ellenbecker has failed to satisfy the "known" element; thus, the known and compelling danger exception does not apply under the circumstances. Ellenbecker does not dispute that the City's inspector testified during his deposition that he did not become aware of the spilled concrete until Pfeifer reported it after she fell, and Ellenbecker does not present any evidence that the City otherwise had any knowledge of the spilled concrete until after Pfeifer's accident. Regardless, Ellenbecker claims that "[e]ven if [that fact were] true, actual knowledge is not required under the circumstances present here." Instead, it asserts that "constructive notice"[14] applies to the known and compelling danger exception to immunity.

¶50 For several reasons, we disagree that constructive notice applies in this case and that constructive notice is sufficient "knowledge" under the known and compelling danger analysis. First, under the three-step test, the law states that "a governmental actor must find out about the compelling danger." *Knoke*, 395 Wis. 2d 551, ¶50; *see also **Engelhardt***, 385 Wis. 2d 86, ¶33 (stating that "[t]he nature of the danger" must be "compelling and known to the [public] officer"). This language does not suggest that anything less than actual knowledge would

---

[14] "Constructive notice is a fiction that attributes knowledge of a fact to a person 'as if he [or she] had actual notice or knowledge although in fact he [or she] did not.'" ***Kochanski v. Speedway SuperAmerica, LLC***, 2014 WI 72, ¶32, 356 Wis. 2d 1, 850 N.W.2d 160 (citation omitted). In general, "constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow … the opportunity to discover and remedy the situation." ***Id.***, ¶34 (citation omitted).

satisfy the legal test. We agree with the City's assertion that "[t]he known danger exception exists because certain situations are so particularly hazardous that knowledge of their existence gives rise to a ministerial duty to immediately act"; therefore, "[i]f a public officer is unaware of the particularly hazardous circumstances, they are equally unaware of the action that must be taken to address the danger." *See **Lodl***, 253 Wis. 2d 323, ¶39.

¶51      Second, Ellenbecker cites no legal authority for the proposition that constructive notice is legally sufficient to make a dangerous circumstance "known" to a governmental entity under the known and compelling danger exception. Indeed, there are no published or citable judicial decisions applying constructive notice in the known and compelling danger context.[15] Ellenbecker acknowledges this fact, yet it asks this court to fundamentally alter the accepted analysis anyway, stating that "there is no compelling reason why constructive notice does not apply to the known danger exception to immunity." Notwithstanding the fact that Ellenbecker fails to develop a persuasive argument as to why constructive notice *should* apply to the known and compelling danger exception, beyond stating that a "municipality could simply stick its head in the sand forever and claim ignorance to escape liability for dangerous sidewalk defects," *see **Papa***, 393 Wis. 2d 1, ¶42 n.15, we refuse to modify the long-established test for the known and compelling danger exception, *see **Cook v. Cook***, 208 Wis. 2d 166, 188-90, 560 N.W.2d 246 (1997) (concluding that the court of appeals' "primary function is error correcting" and that "[t]he supreme

---

[15] In ***Knoke v. City of Monroe***, 2021 WI App 6, ¶51 n.11, 395 Wis. 2d 551, 953 N.W.2d 889 (2020), this court rejected the plaintiff's argument in a slip-and-fall case that the city had constructive notice of hazardous conditions.

court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case").

¶52    Third, to support its position that constructive notice applies, Ellenbecker relies on *Heuser ex rel. Jacobs v. Community Insurance Corp.*, 2009 WI App 151, 321 Wis. 2d 729, 774 N.W.2d 653.  In *Heuser*, a student cut himself while using a scalpel during a flower dissection exercise, and we concluded that a school district could be held liable for the injuries he sustained.  *Id.*, ¶¶2, 7, 34. Importantly, we emphasized that other children had been injured doing the activity earlier in the day; thus, it was "self-evident that another student could get hurt from the flower dissection lab unless the activity was changed," which gave rise to a duty "to 'stop the activity the way it was presently conceived.'"  *Id.*, ¶¶4, 34 (quoting *Voss ex rel. Harrison v. Elkhorn Area Sch. Dist.*, 2006 WI App 234, ¶20, 297 Wis. 2d 389, 724 N.W.2d 420).  Because the teacher "did nothing," immunity was abrogated.  *Id.*, ¶¶33-34.

¶53    Ellenbecker cites this court's statement in *Heuser* that "Wisconsin law does not require knowledge of the specific cause of the injury; it determines knowledge from the general danger of the circumstances."  *See id.*, ¶22.  It claims that the City's inspector "was aware that similar piles of excess cement had been left by sidewalk contractors hired by the City on prior occasions" and was "aware of the hazards attendant with the process of sidewalk replacement"; thus, "[a]s in *Heuser*, the City cannot escape liability when it ignores its statutory and contractual ministerial duties and basically does nothing."

¶54    *Heuser* does not support Ellenbecker's position.  The case did not address the issue of constructive notice because we concluded that the teacher had actual knowledge of the danger.  Moreover, the language Ellenbecker relies on in

29

*Heuser*—that the "law does not require knowledge of the specific cause of the injury," *id.*, ¶22—is read out of context and does not support a conclusion that actual knowledge of the danger is not required. Rather, we simply rejected the idea that the known and compelling danger exception required that the teacher know specifically when or how the injury would occur. As long as the students continued to use the sharp dissection tools, a specific, known and compelling danger existed.

¶55 Our supreme court explained in *Engelhardt* that "[t]he nature of the danger" must be "compelling and known to the [public] officer" and must be "of such force that the public officer has no discretion not to act." *Engelhardt*, 385 Wis. 2d 86, ¶33 (citation omitted). Thus, knowledge of the general hazards associated with sidewalk replacement is insufficient to abrogate immunity under the known and compelling danger exception, which applies under "conditions that are nearly certain to cause injury if not corrected." *See Voss*, 297 Wis. 2d 389, ¶19. Given it is undisputed that the City had no actual knowledge of the spilled concrete, the known and compelling danger exception does not apply.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.